BERWIND–WHITE COAL MINING CO. v. METROPOLITAN S. S. CO.

AMERICAN TRUST CO. v. METROPOLITAN S. S. CO. et al.

(Circuit Court, D. Maine. October 1, 1910.)

No. 625.

CORPORATIONS (§ 566*)—INSOLVENCY AND RECEIVERS—DISTRIBUTION OF EARNINGS OF RECEIVERSHIP—PRIORITY BETWEEN MORTGAGE AND RECEIVERS' CERTIFICATES.

Receivers were appointed for the property of a large steamship company in a creditors' suit, and afterward, on the consolidation of such suit with one to foreclose a mortgage securing bonds, the receivership was extended to the latter. On petition of the receivers with notice to the mortgage trustee and without objection, receivers' certificates were issued and sold at par, to pay coupons due on the mortgage bonds. The property was insufficient to pay the mortgage debt, and a deficiency judgment was taken. As the result of the operation of the property by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the receivers there remained in their hands a considerable amount of net earnings, but not enough to pay the deficiency judgment. The mortgage gave no lien on the income of the mortgaged property. *Held* that, as the mortgagee had no right at common law to the income of the property, on the appointment of receivers by a court of equity, its right thereto under the circumstances could only be enforced in accordance with equitable principles, and that, the bondholders having received the proceeds of the certificates, the holders of such certificates were entitled to priority of payment over the deficiency judgment from the net earnings.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*

Receivers' certificates, see notes to Postal Telegraph Cable Co. v. Vane, 26 C. C. A. 350; Nowell v. International Trust Co., 94 C. C. A. 601.]

In Equity. Suits by the Berwind-White Coal Mining Company against the Metropolitan Steamship Company, and the American Trust Company against the Metropolitan Steamship Company and others. Consolidated cause. On question of payment of receiver's certificates. Order for payment.

See, also, 173 Fed. 806; 183 Fed. 257.

Coolidge & Hight and Clarence A. Hight, for receivers.

Ropes. Gray & Gorham and Robert S. Gorham, for Hayden Stone & Co. and First Nat. Bank of Boston.

William A. Sargent and J. Markham Marshall, for American Trust Co.

PUTNAM, Circuit Judge. This proceeding arises out of the receivership created by the Circuit Court for the District of Maine in certain proceedings against the Metropolitan Steamship Company, wherein an interlocutory receivership was created of all the assets of that corporation by an interlocutory order entered on the 4th day of February, 1908. This order was never litigated in any form. It has always been acquiesced in. The immediate topic is a petition of the receivers for leave to pay two series of certificates of indebtedness known as "series B" and "series C," issued by the receivers as hereinafter shown. The principal litigation is the bill filed by the American Trust Company to obtain foreclosure of certain mortgages made to it. The only objector to the allowance of the application of the receivers is the American Trust Company, which maintains that the funds in the hands of the receivers should be applied to its own claims until they are liquidated. Series B was an issue of $37,000, according to the following form of one of the certificates:

"Metropolitan Steamship Company.

"Receivers' Certificate of Indebtedness.

"This is to certify that the undersigned, William T. Cobb, Calvin Austin and Abel I. Culver. not personally but in their capacity as receivers of the property of the Metropolitan Steamship Company, are indebted to the bearer hereof in the sum of ten thousand dollars ($10,000), payable six (6) months from the date hereof, or earlier, at the option of the receivers, at the office of the City Trust Company, in the city of Boston. Massachusetts, together with interest thereon, until paid, at the rate of six (6) per cent. per annum.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"This certificate, is one of a series of certificates of like tenor, but for varying amounts, the aggregate amount of all certificates of this series being limited to thirty-seven thousand dollars ($37,000), and is issued under authority of and by virtue of an interlocutory decree of the Circuit Court of the United States for the District of Maine, dated June 29, 1908, made in the consolidated cause resulting from the consolidation of the cause of the Berwind-White Coal Mining Company v. Metropolitan Steamship Company with the cause of American Trust Company v. Metropolitan Steamship Company et als., pending in said court; and by the terms of said interlocutory decree, the said certificates are declared to be a debt of the undersigned and their successors as such receivers, and to constitute a lien on the property of the Metropolitan Steamship Company in the custody of said receivers upon the date of said interlocutory decree or subsequently acquired by them or their successors. Said lien, however, to be subordinate and inferior to the lien of receivers' certificates now outstanding to the amount of $80,000 and subordinate and inferior to the lien of any mortgages made to the American Trust Company under that name or the name of the American Loan & Trust Company, trustee, and all bonds and coupons secured thereby and all charges and expenses of the trustee thereunder, and subordinate and inferior to any indebtedness of said Metropolitan Steamship Company found by the court to be a lien superior to said mortgages and the bonds and coupons secured thereby, but said certificates to constitute a lien upon the property aforesaid prior to the general unsecured indebtedness of said Metropolitan Steamship Company.

"This certificate shall not become obligatory until countersigned by the clerk of the United States Circuit Court for the District of Maine as registrar.

"In witness whereof the undersigned as such receivers have signed this certificate this 10th day of July, A. D. 1908.

"William T. Cobb,

"Calvin Austin,

"Abel I. Culver,

"Receivers Metropolitan Steamship Company.

"Countersigned and registered this 10th day of July A. D. 1908.

"James E. Hewey,

"Clerk United States Circuit Court for the District of Maine. [L. S.]"

Series C bears date the 7th day of November, 1908, and is for the gross amount of $64,606. These certificates contain a provision subjecting them to the liabilities for supplies and materials which were to be paid according to the decrees appointing the receivers. In all other particulars they read the same as the certificates of series B. There are sufficient funds in the hands of the receivers to discharge these prior liabilities in any event; so that, although all parties, interested were notified to answer to the present application of the receivers, no holders of claims for supplies or materials appeared. Therefore the two series of certificates stand for the present hearing exactly alike. Consequently, in disposing of series B, we also dispose of series C.

We have spoken of the interlocutory order creating the receivership entered on the 4th day of February, 1908. This needs explanation. This order was entered in the suit of Berwind-White Coal Mining Company v. Metropolitan Steamship Company, which suit was the first commenced, and which was merely a creditor's bill as ordinarily called. It carefully reserved all the rights of the American Trust Company as trustee. While it authorized the receivers to take possession of all the assets of the corporation and to operate its steamship lines, it expressly stated that the appointment of receivers was without prejudice to, and subject to all, the rights legal and equitable of the Ameri-

can Trust Company as trustee, and of the holders of bonds secured by the trust mortgage. Subsequently the bill was filed in American Trust Company v. Metropolitan Steamship Company for the foreclosure of the mortgages as already said. As soon as the bill was filed, the solicitors for American Trust Company also filed, on the 4th day of March, 1908, an application for the appointment of receivers, pendente lite therein, of all the properties described in the bill of complaint; and on the same 4th day of March, 1908, an order drawn and offered by the solicitors for the complainant, the American Trust Company, was entered consolidating the two suits we have described. That order also extended the receivership in the case of the Berwind-White Coal Mining Company, referred to, "to all the matters and things to which the bill of complaint of the American Trust Company related." It added that it was so extended for the purposes prayed for in the bill of complaint of the American Trust Company, and was made to embrace and cover all the mortgage property described in that bill. It also appears in the order that the counsel for all the parties, including the American Trust Company, were present in open court, and agreed to the order last described. Thus it came about that the receivership operative here originated in the affirmative action of the American Trust Company. Had it not been so, the questions in reference to the income acquired by the receivers in operating the steamship lines might have been of a mixed and difficult character. As it now stands, however, the earnings of the receivership were, in law, the result of the affirmative action of the American Trust Company asking from the court the extension of the receivership to the entire body of the mortgaged property, thus canceling the reservation in that particular which was inserted in the original order of February 4, 1908, which we have described. With this preliminary explanation we adopt the summary in the printed record before us, having fully verified its statements. We have added to it some further matters necessary to bring the entire case before the court.

"On August 7, 1909, upon the bill and supplemental bills of American Trust Company, a foreclosure decree was entered, pursuant to which decree the property of the steamship company covered by the mortgages was sold by special masters, the property so sold was conveyed and delivered to the purchaser, and the sale was confirmed by an order entered November 1, 1909. The proceeds of the sale were distributed ratably among the bonds and matured coupons secured by the mortgages, and the several reports relating to said sale and distribution were confirmed.

"On November 8, 1909, the court allowed claims to that date for costs of the receivership, compensation of receivers, and fees of counsel, and the same were paid by the receivers.

"The current cash assets other than cash were then sold by order of the court, and turned over to the purchaser. Under an order of the court for proof of supply and material claims the receivers ascertained and reported such claims to amount to $144,395.11. The court confirmed that finding and report, and on September 5, 1910, ordered a dividend of 50 per cent. to be paid on said claims."

It also. appears that there is now in the hands of the receivers approximately $275,000; that the receivers continued to operate the property until the foreclosure was completed in all respects; that the amount now in the hands of the receivers, $275,000, is the net result of the earnings of the property while in the hands of the receivers; that the receivers, when they were appointed, came into possession of and disbursed certain moneys and quick assets which were the result of the operation of the properties before either bill which we describe was filed; that therefore the $275,000 is in no respect any part of the body of the property covered by the mortgage; that the result of the foreclosure sale was to leave a deficiency of $261,295.27, for which, with interest, judgment was entered on foreclosure; and that there are no assets from which this deficiency can be paid unless from the $275,000 now in the hands of the receivers. Therefore the American Trust Company claims that the outstanding receivers' certificates are subject to and inferior to the deficiency debt, and that no portion of the certificates should be paid until the deficiency debt is satisfied by the receivers. There are no outstanding liabilities for which the receivers are liable, or to which the amount in their hands can be applied, except the unpaid 50 per cent. of the so-called "supply claims;" the receivers' certificates in question, and the deficiency debt which we have described. Of course, the fund in the hands of the receivers could not be demanded in payment of the judgment for deficiency merely because it is a judgment. If the American Trust Company has any claim to that fund, it is because it is entitled as mortgagee to the "rents and profits" or income of the property pending foreclosure.

The mortgages contain no specific pledge of the "rents and profits" or income, and no specific stipulation on the part of the Metropolitan Steamship Company that it would account for or pay over the "rents and profits" or income, either prior to default or afterwards. The description in the mortgage of the property pledged is as follows:

"All and singular the property, both real, personal, and mixed, now owned, or hereafter acquired, by the steamship company, including the ships, steamships, steamboats, vessels, land, wharves, docks, piers, warehouse, buildings, approaches, and structures now owned, or hereafter acquired, by the steamship company. And also including the equipment, machinery, materials, furniture, fuel, supplies, contracts, books, documents, choses in action, and other chattels and personal property now owned, or hereafter acquired, by the steamship company. And also including the easements, privileges, and rights and all other property of every kind and nature now owned, or hereafter acquired, by the steamship company, which premises shall include without restricting the generality of the foregoing description the property described in the schedule hereto."

This contains a sweeping transfer of all property, present and future. It does not specify moneys in terms, or income. Even if it did, and even under the liberal rules of the federal courts as to after-acquired property, a broad attempt to convey moneys and income would be ineffectual; although, of course, a conveyance of income of certain specified property which was pledged might be effectual to a certain extent. Therefore, in order to give the American Trust Company any lien on the earnings of the Metropolitan Steamship Company, it must be by applying the rules of the common law, which, under ordi-

nary circumstances, refuse to give the mortgagee income of mortgaged property until from the time he has actually obtained possession thereof; although, under certain provisions in mortgages, equity may sometimes compel the mortgagor to account for and pay for intervening "rents and profits" or income.   Different decisions of the Supreme Court of the United States apparently lay down some rules contrary to what we have stated; but, on a careful examination of all the circumstances, none will be found contradicting these propositions.   The last statement of the rule in that court is in Willis v. Eastern Trust & Banking Company, 169 U. S. 295, 310, 18 Sup. Ct. 347, 42 L. Ed. 752, which is in complete harmony with what we have stated.   A statement of the rule (1 Jones on Mortgages [6th Ed.] § 670) is in harmony with the common law as always practiced and as stated by us.   It followed, therefore, that, in order to make available the intervening income, it was necessary for the American Trust Company to proceed in equity and seek the appointment of receivers, as it did.   It might have stayed out of equity and undertaken to assert its common-law rights; and, if it thus proved successful, it might thus have avoided equitable application by the court of any part of the net income which came into the hands of the receivers.   Not having done this, but having on the other hand sought the aid of the equity court, the net accumulation of income, including the $275,000 referred to, is subject to equitable rules; and the disposition thereof was required to be made on equitable principles.   In no other way can the continual application by the federal courts of income to the payment of priority claims be explained or supported.   This practice is such a continuous testimony to what we assert that it is hardly necessary to cite authorities to support ourselves.   Therefore, while ultimately the remnant of the fund now in the hands of the receivers should be paid to the American Trust Company to the extent of its deficiency, as "rents and profits" or income, as to a mortgagee who has secured the assistance of a receiver from the equity court, yet this payment must not be accomplished until all superior equities have been disposed of.   That the holders of the certificates in question have an equity superior to that of the amount unpaid to the American Trust Company hardly needs any elaboration.

It is true that the receivers' certificates in question here were sold merely for the purpose of paying interest in arrears on the bonds which the mortgage to the American Trust Company secured.   It is also true, as said by the American Trust Company, that the payment of those coupons postponed the foreclosure for the corresponding period covered by the due dates thereon, in this case we understand a year.   It is also true that the American Trust Company maintains that the purpose of the issue of the certificates and of applying the funds to the payment of coupons was merely through an intent on the part of the corporation to delay foreclosure.   There is not a particle of proof in favor of that proposition.   On the other hand, these certificates were issued by virtue of an order based upon petitions setting out that it was for the common interest that those particular coupons should be paid.   Why it was for the common interest does not appear; but it is a matter of common knowledge that, if a foreclosure sale had

taken place at the earliest time at which it might have occurred if the coupons paid out of the proceeds of the certificates had not been paid, it would have come at a time before the market had recovered from a general panic, and at a time when the Metropolitan Steamship lines were in a broken down condition financially, and therefore at a time unfortunate for the sale in view of the interests of all concerned. However, the case puts clearly the contrary of this proposition. The American Trust Company was duly notified of the applications for the issues of the certificates in question, was in court when the orders were made, made no objection thereto, and not only made no objection thereto, but indorsed on the order authorizing the issue of certificates C that it did not care to be heard thereon. There can be no question that the American Trust Company knew that, if it had opposed the issues of these certificates for the mere payment of interest to its own clients and to its own bondholders, the court would never have made any of the orders providing therefor. It would be beyond credit to assume that the court would have authorized these certificates for the purpose of forcing payment of interest on bondholders who did not wish it. We doubt not under the circumstances that the allegations in the petitions of the receivers to which we have referred were in accordance with the facts. If they had not been, there was ample opportunity to meet them; and therefore we find as a fact that it was for the interest of all concerned that these certificates should have been issued as they were issued. Beyond that it cannot require any argumentation to show that the receivers' certificates issued by the court without any objection, which court was administering a receivership in a matter involving several millions of dollars, in comparison with which the total of the certificates was almost a negligable quantity, should be protected as against an unpaid balance of a deficiency decree.

However, in one aspect, it seems to us to reduce the position of the American Trust Company to a matter of mere illegal injustice. These certificates were sold at par, and every dollar of the funds which they represented went into the hands of the bondholders in discharge of coupons to an equal amount at par. The American Trust Company now desires that its bondholders should receive two dollars for one; one of the two dollars being what they derived from the sale of the receivers' certificates, and the other one of the two dollars to come out of the pockets or those holders of the certificates, without any equivalent whatever therefor. This is a result which no court of equity could possibly permit.

We have said that, as to the general principles herein considered, we hardly need a citation of authorities. Nevertheless, the language of the Supreme Court in Fosdick v. Schall, 99 U. S. 235, 253 (25 L. Ed. 339), is thoroughly crystalized into the rules on this topic as administered by that court; and it is so clearly applicable to the facts in this case we think it well to quote from it as follows:

"For even though the mortgage may in terms give a lien upon the profits and income until possession of the mortgaged premises is actually taken or something equivalent done, the whole earnings belong to the company and are subject to its control. The mortgagee has his strict rights which he

may enforce in the ordinary way. If he asks no favors, he need grant none. But, if he calls upon a court of chancery to put forth its extraordinary powers and grant him purely equitable relief, he may with propriety be required to submit to the operation of a rule which always applies in such cases, and do equity in order to get equity."

The clerk will enter the following interlocutory decree:

It is ordered, adjudged, and decreed that the receivers deposit in the registry of the court forthwith a sum equal to the principal of the receivers' certificates constituting series B and C now outstanding and interest thereon to the date of the deposit; that they also deposit sums equal to the poundage of the clerk, and his lawful fees and disbursements in reference to the matter to which this decree relates; that the receivers deposit with the clerk for cancellation any certificates which have not been sold or which have come back into the hands of the receivers; that the holders of the several certificates surrender the same to the clerk for cancellation and payment; that, before payment, each shall be authenticated by the signature of the receivers or their solicitor as valid, and the clerk shall verify each by reference to the registry which shows the issue thereof; that, each being so authenticated, the clerk shall pay it, with interest to the date of the deposit as aforesaid; and that, upon such payment, each certificate shall be effectually canceled by the clerk, and shall be duly filed.