AMERICAN TRUST CO. v. METROPOLITAN S. S. CO. et al.

(Circuit Court of Appeals, First Circuit.   September 25, 1911.)

No. 914.

1. RECEIVERS (§ 128*)—RECEIVERS' CERTIFICATES—PRIORITY AS AGAINST DEFICIENY OF MORTGAGE ON FORECLOSURE.

Where, after the appointment of receivers for a corporation whose property was mortgaged to complainant trustee to secure bonds, the receivers on notice to and without objection by complainant were authorized to issue certificates to pay interest on the bonds and the issuance of such certificates, and the payment of the interest was beneficial to all concerned, in that it prevented a sale of the property on mortgage foreclosure at an inopportune time, complainant could not claim after foreclosure that it was delayed in the exercise of its right to foreclose by reason of their issuance and the payment of the interest, and hence the certificates were entitled to priority of payment out of the net earnings of the property in the hands of the receivers over a deficiency arising on foreclosure of complainant's mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 219–222; Dec. Dig. § 128.*]

2. RECEIVERS (§ 128*)—RECEIVERS' CERTIFICATES—PRIORITY.

Whether receivers' certificates are entitled to priority of payment out of net income in the hands of receivers over a deficiency judgment arising on mortgage foreclosure is not governed by fixed rules, but is dependent on the equities of the parties appearing from all the facts and circumstances of the case.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 205, 219–222; Dec. Dig. § 128.*

Receivers' certificates, see notes to Postal Telegraph Cable Co. v. Vanes, 26 C. C. A. 350; Nowell v. International Trust Co., 94 C. C. A. 601.]

Appeal from the Circuit Court of the United States for the District of Maine.

Suit in equity by the American Trust Company as trustee against the Metropolitan Steamship Company and others. From an order (183 Fed. 250) directing payment of a receiver's certificate as a prior claim over a deficiency judgment on mortgage foreclosure, the claimant trust company appeals. Affirmed.

J. Markham Marshall (Ralph W. Gwinn, on the brief), for appellant.

Clarence A. Hight (Coolidge & Hight, on the brief), for appellees receivers of Metropolitan S. S. Co.

William H. Best and Robert S. Gorham (Raymond H. Oveson and Ropes, Gray & Gorham, on the brief), for appellees Hayden, Stone & Co. and another.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

COLT, Circuit Judge.   This is an appeal from an order of the Circuit Court directing the payment of certain receivers' certificates.   The opinion of the Circuit Court is found in 183 Fed. 250.

The only question in the case is whether these certificates are en-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

titled to priority of payment over the deficiency claim under the mortgage, out of the net income of the property while in the hands of the receivers.

[1] It is now well settled in this class of cases that questions of priority are not governed by fixed and inflexible rules. Each case has its own special facts and circumstances which properly influence the court in reaching a just conclusion. This is because the appointment of a receiver is not a matter of strict right; and hence, when a mortgagee calls upon a court of equity to exercise its extraordinary powers and grant him purely equitable relief, he submits himself to the operation of equitable rules. Fosdick v. Schall, 99 U. S. 235, 253, 254, 25 L. Ed. 339.

The order of the circuit judge in this case was based upon the application of this doctrine to the facts of this particular case. In other words, Judge Putnam held that the right of the mortgagee to the net earnings in the hands of the receivers could only be enforced on equitable principles, and that, the mortgagee having received the proceeds of these certificates, the holders of such certificates were entitled to priority of payment over the deficiency claim under the mortgage.

[2] The material facts, which are fully set forth in the opinion of the court below, may be summarized as follows:

The Metropolitan Steamship Company was a Maine corporation engaged in a coastwise steamship business as a carrier of freight and passengers between New York and Boston. On January 29, 1908, a creditors' bill was filed against the company, and receivers were appointed who took possession of the property and proceeded to carry on the business. At this time the company had made a mortgage to the American Trust Company of all its property "now owned or hereafter acquired," to secure an issue of $3,000,000 bonds, of which $2,509,000 were outstanding. The mortgage did not specifically cover rents, profits, or income. The decree appointing receivers expressly stated that it was made subject to all the rights of the trustee and bondholders under the mortgage.

At the time of the appointment of the receivers the semiannual interest on the mortgage, due November 1, 1907, had only been partially paid, leaving a balance due of $29,375. There was also a default of $6,000 in the sinking fund requirements of the mortgage.

On March 4, 1908, the American Trust Company filed a foreclosure bill based upon the defaults in interest and in the sinking fund, and on the same day, with the consent of all parties, an order was entered consolidating the two cases, and extending the receivership under the creditors' bill "to all the matters and things to which said bill of complaint of said American Trust Company" related.

On June 25, 1908, the receivers filed a petition to issue receivers' certificates to pay the interest due November 1, 1907, and to meet the sinking fund requirement of the mortgage.

On June 29, 1908, an interlocutory decree was entered authorizing the issuance of receivers' certificates to cure these defaults. This issue of certificates amounted to $36,000, and is known as series "B."

These certificates were made "subordinate and inferior to the lien of any mortgages made to the American Trust Company." It appears from the decree that counsel representing all parties were present in court, and that no party opposed the entry of the decree.

On November 5, 1908, on a similar petition by the receivers, another series of certificates was authorized by the court to pay the coupons due May 1, 1908. This series amounted to $64,000, and is known as series "C."

On the face of this decree the trust company made the indorsement that it did not care to be heard. These certificates were made subordinate to the lien of the mortgage and also subordinate to the lien of certain claims for supplies.

On August 7, 1909, a foreclosure decree was entered. At the foreclosure sale the property did not bring enough to satisfy the mortgage debt in full; the deficiency amounting to $261,295.27. The foreclosure decree reserved, subject to the further order of the court, the net earnings of the property in the hands of the receivers. These earnings amount to $275,000.

The only liabilities remaining unpaid are (1) receivers' certificates, $100,000; (2) supply claims, $144,395.11; (3) deficiency claim under the mortgage, $261,295.27.

It is admitted that the supply claims have the first lien on this fund of $275,000, and in the brief for the receivers it is stated that these claims have been paid in full, and that there now remains in the hands of the receivers about $125,000 from which to pay the receivers' certificates and the deficiency claim under the mortgage.

If the deficiency claim has priority, it will exhaust this fund, and leave nothing to pay the holders of the certificates. On the other hand, if the certificates have priority, there will be a balance left of about $25,000, to be applied to the mortgage indebtedness.

In considering which of these two claims has the superior equity, the Circuit Court in its opinion says:

"It is true that the receivers' certificates in question here were sold merely for the purpose of paying interest in arrears on the bonds which the mortgage to the American Trust Company secured. It is also true, as said by the American Trust Company, that the payment of those coupons postponed the foreclosure for the corresponding period covered by the due dates thereon, in this case we understand a year. It is also true that the American Trust Company maintains that the purpose of the issue of the certificates, and of applying the funds to the payment of coupons, was merely through an intent on the part of the corporation to delay foreclosure. There is not a particle of proof in favor of that proposition. On the other hand, these certificates were issued by virtue of an order based upon petitions setting out that it was for the common interest that those particular coupons should be paid. Why it was for the common interest does not appear; but it is a matter of common knowledge that, if a foreclosure sale had taken place at the earliest time at which it might have occurred if the coupons paid out of the proceeds of the certificates had not been paid, it would have come at a time before the market had recovered from a general panic, and at a time when the Metropolitan Steamship lines were in a broken-down condition financially; and therefore at a time unfortunate for the sale in view of the interests of all concerned. However, the case puts clearly the contrary of this proposition. The American Trust Company was duly notified of the applications for the issues of the certificates in question, was

in court when the orders were made, made no objection thereto, and not only made no objection thereto, but indorsed on the order authorizing the issue of certificates C that it did not care to be heard thereon. There can be no question that the American Trust Company knew that, if it had opposed the issues of these certificates for the mere payment of interest to its own clients and to its own bondholders, the court would never have made any of the orders providing therefor. It would be beyond credit to assume that the court would have authorized these certificates for the purpose of forcing payment of interest on bondholders who did not wish it. We doubt not under the circumstances that the allegations in the petitions of the receivers to which we have referred were in accordance with the facts. If they had not been, there was ample opportunity to meet them; and therefore we find as a fact that it was for the interest of all concerned that these certificates should have been issued as they were issued. Beyond that it cannot require any argumentation to show that the receivers' certificates, issued by the court without any objection,-which court was administering a receivership in a matter involving several millions of dollars, in comparison with which the total of the certificates was almost a negligible quantity, should be protected as against an unpaid balance of a deficiency decree."

It is contended by the American Trust Company on this appeal that, the receivers having taken possession of the property in the foreclosure suit, it has a prior lien on the net income in their hands; and, further, that this prior lien was recognized both in the wording of the interlocutory decrees authorizing the issuance of the certificates and in the wording of the certificates themselves.

Conceding this contention to be sound, as a general proposition, it does not meet the real issue in this case, as is apparent from the following statement:

As the case now stands, the mortgagee has received the value of the property under the foreclosure sale, and $100,000, the proceeds of the receivers' certificates; and, if its present claim is allowed, it will receive in addition thereto the net income of the property while in the hands of the receivers.

So that the real question in this case is not whether the mortgagee is entitled to the proceeds of the property and the net income after possession by the receivers, but whether over and above this, and, as against the claim of the certificate holders, it is entitled to an additional $100,000, new money, borrowed on these certificates.

The ground upon which the trust company claims that it is entitled to this additional $100,000 is that it was paid for the purpose of delaying the foreclosure of the mortgage. And here we reach what may be said to be the turning point in this case.

If the evidence had showed that the trust company and the bondholders were pressing for a speedy foreclosure of the mortgage, and to that end had desired to take advantage of the defaults in interest due November 1, 1907, and May, 1, 1908, and that these certificates were issued by the court against their will and in spite of their objection, it might with reason be said that this $100,000 was forced upon them in order to secure a postponement of the foreclosure sale for a year; in other words, that this $100,000 was paid for the involuntary surrender of the right to a speedy foreclosure.

The evidence, however, does not present any such state of facts. On the contrary, the court below has specifically found "as a fact that

it was for the interest of all concerned that these certificates should have been issued as they were issued."

In support of this finding it appears, as stated by the court below, that, if the foreclosure sale had occurred at an earlier date, it would have come at a time when the business of the country had not recovered from the recent panic, and at a time when the steamship company was in a broken-down condition financially, and hence at an unfortunate time for the sale; and it further appears that the trust company was duly notified of the applications for the issue of the certificates, that its counsel were present in court when the orders were made and offered no objection, and that in case of series C the counsel indorsed upon the order that they did not care to be heard.

These facts and circumstances fully warrant the finding that these certificates were issued in the interest of all concerned, and they fully disprove any contention that the trustee and bondholders desired a speedy foreclosure of the mortgage, and that they were forced to surrender this right through the issue of these certificates.

Since the issuing of these receivers' certificates and the consequent postponement of the sale under the mortgage were for the benefit of all concerned, no party in interest should derive any undue advantage therefrom.

It follows that the bondholders should receive no more and no less than they would have received if no certificates had been issued. And this is exactly what they will receive if the claim of the holders of these certificates has priority.

Assuming that no certificates had been issued, the deficiency claim under the mortgage would have been $100,000 more or $361,295.27 (instead of $261,295.27), and if from this we deduct $125,000, the net earnings in the hands of the receivers, it leaves a balance of mortgage indebtedness of $236,295.27. On this basis, it is apparent that the bondholders would receive the entire proceeds of the corpus of the property at the foreclosure sale and the entire net income in the hands of the receivers.

Now precisely the same result is reached if we take from the $175,-000 net income in the hands of the receivers the sum of $100,000 to pay the holders of the certificates and apply the remaining $25,000 to the present deficiency claim under the mortgage. The account will then stand as follows: Deficiency claim $261,295.27, from which deduct $25,000, which leaves a balance of mortgage indebtedness of $236,295.27. This is the same amount as would have been left unpaid provided no certificates had been issued, and upon this basis the bondholders will have received an amount equal to the proceeds of the sale and the net income in the hands of the receivers.

In conclusion, it may be said that in allowing priority to the claim of these certificate holders we reach an equitable result, whereas, to hold otherwise, would be in effect giving the bondholders a bonus of $100,000, which, under the existing facts and circumstances, would be manifestly unjust.

The order of the Circuit Court is affirmed.