**RECONSTRUCTION FINANCE CORPORATION v. MISSOURI–KANSAS–TEXAS R. CO. et al.**

**MISSOURI–KANSAS–TEXAS R. CO. v. RECONSTRUCTION FINANCE CORPORATION et al.**

**KANSAS CITY SOUTHERN RY. CO. v. RECONSTRUCTION FINANCE CORPORATION et al.**

**EUBANKS v. SAME.**

Nos. 11809–11812.

Circuit Court of Appeals, Eighth Circuit.

July 21, 1941.

Frederick E. Baukhages, III, Counsel, Reconstruction Finance Corporation of Washington, D. C. (Claude E. Hamilton, Jr., General Counsel, Cassius M. Clay, Asst. Gen. Counsel, and Mrs. Florence de Haas Dembitz, all of Washington, D. C., and G. C. Hardin, of Fort Smith, Ark., on the brief), for Reconstruction Finance Corporation.

M. D. Green, of Oklahoma City, Okl. (C. S. Burg, of St. Louis, Mo., and John E. M. Taylor and Lloyd W. Jones, both of Oklahoma City, Okl., on the brief), for Missouri-Kansas-Texas R. Co.

James B. McDonough, Jr., of Kansas City, Mo. (F. H. Moore and Wm. E. Davis, both of Kansas City, Mo., and Joseph R. Brown, of Fort Smith, Ark., on the brief), for Kansas City Southern Ry. Co.

Fred Hansen, Asst. Atty. Gen., of Oklahoma, and Mac Q. Williamson, Atty. Gen. of Oklahoma (Clyde Followell, of Poteau, Okl., Hugh J. Adams, of Guthrie, Okl., Guy A. Curry, of Stigler, Okl., Paul Gotcher, of McAlester, Okl., F. A. Greene,

of Eufaula, Okl., Harvey Powell, of Holdenville, Okl., Roy Parham, of Okemah, Okl., and Frank McVey, of Chandler, Okl., Co. Attys., on the brief), for the State of Oklahoma and its political subdivisions.

Clinton R. Barry, U. S. Atty., and Duke Frederick, John E. Harris, and Thomas C. Pitts, Asst. U. S. Attys., all of Fort Smith, Ark., for the United States.

Wm. J. B. Myres and F. P. Sizer, both of Monett, Mo., for Roy Eubanks.

H. P. Warner and C. R. Warner, both of Fort Smith, Ark., for J. S. Parks, receiver of Fort Smith & W. Ry. Co.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

During a seven year receivership of the Fort Smith and Western Railway Company, it was impossible to pay the operating expenses, and the court finally ordered the property sold. Free of liens, the assets brought $444,500. Claims totalling over $566,000 were filed for unpaid operating expenses and for money borrowed on receiver's certificates. The court, after a reference to a special master and a review and modification of the master's recommendations, made an order classifying and allowing these claims as follows:

| | |
|---|---|
| First priority—Judicial costs.....(not determined) | |
| Second priority—Taxes due United States | $ 25,976.44 |
| Third priority—Taxes due State of Oklahoma and its political subdivisions ........... | 102,873.51 |
| Fourth priority—Receiver's operating expenses ..................... | 409,344.08 |
| Including | |
| (a) Part of RFC receiver's certificates ................ $217,776.77 | |
| (b) MKT claim................. 90,810.73 | |
| (c) KCS claim ................ 54,173.57 | |
| (d) Roy Eubanks' claim...... 11,644.00 | |
| Fifth priority—Balance RFC receiver's certificates ................ | 28,213.06 |

Separate appeals have been taken by Reconstruction Finance Corporation, referred to herein as RFC; by Missouri-Kansas-Texas Railroad Company, referred to herein as MKT; by The Kansas City Southern Railway Company, referred to herein as KCS; and by Roy Eubanks.

RFC contends that its receiver's certificates, in their full amount, should have been given priority over all other claims, except judicial costs. MKT and KCS, both of whose claims arise out of joint track and terminal facilities agreements, contend that the trial court erred in placing only $28,213.06 of RFC's claim in the class of fifth priority,[1] and that the tax claims, which were classified as second and third priorities, were not properly entitled to preferential payment over the receiver's other operating expenses. Eubanks takes a similar position with respect to RFC's claim and the tax priorities, but his principal contention is that his own claim, based on a judgment under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the loss of his legs, as a brakeman, during receivership operation, is entitled to preferential payment over all other operating expenses.

█ RFC's certificates antedate all the other obligations of the receiver here involved. Any priority, however, which it was intended at the time that they were to have over subsequent operating expenses should have been clearly indicated in the court orders which authorized their issuance. The orders before us provide that "said certificate or certificates * * * shall be secured by, and the same are hereby declared to be and constitute a direct lien upon all the property and franchises, wherever located, of the Fort Smith and Western Railway Company, now owned or hereafter acquired by it, and upon the net income thereof, prior and paramount to the * * * mortgages or deeds of trust, executed by said defendant Railway Company and now outstanding, and prior and paramount to all bonds and all other sums, and all interest thereon secured by said mortgages or deeds of trust, and prior and paramount to all other liabilities and obligations of every kind, character and nature of said Fort Smith and Western Railway Company."

RFC argues that this language was intended to, and did, constitute the certificates a primary lien upon all property in the hands of the receiver, and that no other claims could properly be paid out of such assets until this charge was satisfied. It will be noted, however, that the orders merely provide that the certificates shall constitute a lien prior to existing mortgages and prior to "all other liabilities and obligations * * * of said Fort Smith and Western Railway Company." (Italics sup-

---

[1] MKT's brief argues that $105,672.08 of RFC's certificates should have been classified in fifth priority, while KCS claims that the amount should have been $115,410.06.

plied). No reference is made to the liabilities and obligations of the receiver for the expenses of continued operation.

Quite obviously, it was contemplated that the receiver's operation of the railroad might continue for an indefinite period. The loan application filed with RFC declared that improvement in general business conditions could reasonably be expected so to increase the revenues as to enable payment to be made of all subsequent operating and maintenance expenses, as well as the RFC loan. Neither the orders authorizing the issuance of the receiver's certificates nor the petitions upon which they are based indicate, however, that the court and the parties foresaw or were undertaking to make provision to cover the situation, in the event that this contingency failed to materialize.

The receiver's operation of the railroad was not in the interest of creditors and stockholders alone, but equally for the purpose of attempting to preserve the service to the public, to which the railroad of necessity was dedicated. No one could say how long the effort to serve the public interest through receivership operation ought justifiably to. be continued. In this situation, the conclusion ought not to be indulged, unless inexorably compelled by the language of the order and the conditions under which it was made, that the court was intending to fetter and perhaps render wholly impossible the continued operation of the railroad, by an impotence to make acceptable provision for necessary future expenses.[2] Certainly such a conclusion is not soundly required here. We think the trial court properly held that the orders authorizing the receiver's certificates were intended to create a priority only over existing liens and obligations of the railway company, and that the matter of the receiver's future operating expenses was left entirely open. Indeed, even if an attempt had been made to create an absolute and complete priority in the issuance of the receiver's certificates, this would not, generally speaking, have precluded the court from subsequently making an equitable readjustment, with respect to the necessary expenses of continuing the operation of the railroad in the public interest.[3]

In its classification of the claims, the trial court included in the fourth priority, with subsequent operating expenses, so much of the proceeds of the RFC certificates as had been used by the receiver to pay his then accrued operating expenses and to satisfy certain previous obligations which the court regarded as being on an equitable parity with receivership operating expenses. Thus, $30,000 had apparently been used to make

---

[2] Compare the following expressions:

"It is not presumable that the court would devest itself of the power to pay the expense of operation which it had assumed. That would be an act of felo de se." Anderson v. Condict, 7 Cir., 93 F. 349, 353.

"It · is said, however, that the court made the certificates a first lien on the property, and that, having contracted for this, it cannot afterwards let in anything to impair its own decree. But the court cannot bargain away its powers, if indeed it can be held to have done so. * * * The court, in so pledging the property of the company, cannot be held to have tied its hands or stripped itself of authority to deal with it to this end. If that was not expressed in the order, it was implied. * * * The priority given [the receiver's certificates] by the order had relation to their standing with respect to other incumbrances, and was not with the idea of preferring them over administration expenses, subsequently incurred, which may therefore properly be first paid out of the proceeds of this sale, as provided in the foreclosure decree." Pusey & Jones v. Pennsylvania Paper Mills, C.C.Pa., 173 F. 634, 637, 638, affirmed 3 Cir., 185 F. 481.

[3] See Union Trust Co. v. Illinois Midland Ry. Co., 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963; Kneeland v. American Loan & Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379; In re John W. Farley & Co., 7 Cir., 227 F. 378, 381; American Trust Co. v. Metropolitan Steamship Co., 1 Cir., 190 F. 113, 117; Bank of Commerce v. Central Coal & Coke Co., 8 Cir., 115 F. 878, 882.

In Union Trust Co. v. Illinois Midland Ry. Co., supra, the court said (page 456 of 117 U.S., page 821 of 6 S.Ct., 29 L.Ed. 963), "The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court, in regard to the loans."

Note also the expression in Ball v. Improved Property Holding Co., 2 Cir., 247 F. 645, 650, "We do not forget that the court is not absolutely bound to recognize the priorities fixed by the order, and that the matter is open to equitable readjustment, however conclusive a protection it may be to the receiver as to payments made under its terms."

repayment of funds borrowed or diverted by the receiver to meet the operating payroll of the railroad for the month preceding the receivership. Some of the money used by the receiver to make payments on obligations under joint facilities agreements and on obligations for car repairs, which had accrued prior to the receivership,—among the beneficiaries of which were appellants MKT and KCS—was also included in this priority. So, too, the sum of approximately $42,000, used to pay taxes to the State of Oklahoma, which had been levied for the previous year, but which, under the provisions of a special extension statute,[4] were not required to be paid until after the time the receiver was appointed, was allowed as a preferential part of RFC's claim.

■ Appellants MKT, KCS, and Eubanks contend that no part of the three items referred to should have been placed in the fourth priority. It is well settled, however, that pre-existing debts of a railroad, for expenses currently and reasonably necessary to its ordinary operation as a going concern, incurred within a limited period prior to the receivership—usually not exceeding six months—may, in the sound discretion of the trial court, be allowed preferential payment.[5] Money loaned to the receiver, with court approval, for the payment of indebtedness entitled to a preference, may properly be granted a corresponding priority.

■ The record does not indicate the exact cut-off dates adopted by the trial court for preferential purposes, as to the various obligations incurred prior to the receivership. Of the RFC money used to pay previous material and supply bills, none appears to have been placed in the fourth priority. On the other hand, all the money used to discharge loans made to the receiver to care for the preceding month's payroll, or to replace funds diverted for this purpose, was obviously included. Only part of the funds used to satisfy the obligations arising out of joint facilities agreements or for car repair bills for the preceding six months' period seems to have been accorded preferential recognition. Appellant KCS contends that the trial court did not intend to include any part of the pre-existing joint facilities or car repair claims in the fourth priority, and that it must have done so through some inadvertent error in calculation or transposition. But, on the record before us, and in the face of the positive figures set out in the court's memorandum opinion, this contention can hardly be regarded as anything more than conjecture and argument.

■ What part, if any, of the railroad's current operating expenses for the six months preceding the receivership should be accorded a preference was a question for the sound discretion of the trial court, on the facts and equities of the particular case.[6] We cannot say, as appellants MKT, KCS, and Eubanks would have us do, that no part of the indebtedness incurred prior to the receivership, for current operating expenses, ought equitably to be allowed preferential recognition in the present situation. Nor, on the other hand, does the record unequivocally demonstrate that the trial court abused its discretion in not broadening its classification of current operating expenses, or in not adopting a more inclusive cut-off date, so as to have increased the amount of RFC's preferential allowance. We are impressed that the trial court attempted to give careful and conscientious consideration to the equities of priority determinations, and we agree generally with the statement in its memorandum opinion that "the court which has been charged with the administration of the insolvent's affairs through a course of years must have, by reason of its intimate relations with such administration, a better knowledge of the equitable adjustments to be made among creditors than any one else". As to the priority allowed that part of RFC's funds used to pay taxes to the State of Oklahoma, which had been levied for the year preceding the receivership, but which, by the terms of a special extension statute,[7] had been made

---

[4] Okl. Session Laws 1931, Ch. 66, Art. 18, p. 277.

[5] Southern Railway Co. v. Carnegie Steel Co., 176 U.S. 257, 20 S.Ct. 347, 44 L.Ed. 458; Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339; Pitcairn v. Fisher, 8 Cir., 78 F.2d 649, 652; Rodger Ballast Car Co. v. Omaha, Kansas City & Eastern Railroad Co., 8 Cir., 154 F. 629, 632.

Note also the expression of Mr. Justice Brandeis in St. Louis & San Francisco R. R. Co. v. Spiller, 274 U.S. 304, 311, 47 S.Ct. 635, 71 L.Ed. 1060.

[6] Fosdick v. Schall, 99 U.S. 235, 251, 252, 25 L.Ed. 339.

[7] Okla. Session Laws 1931, Ch. 66, Art. 18, p. 277, provided that "the time for payment of the first half of the 1930 ad

non-delinquent until after the receiver was appointed, we think, in view of the object and effect of the statute, and the limited and proximate period involved, that the court could properly permit these taxes to be accepted and treated as an obligation of the receivership, like any other taxes that might accrue during its course, and that having authorized the receiver to borrow money to make payment of them, it could legitimately classify the receiver's resulting obligation, on a parity with other operating expenses.[8]

All of appellants contend that the trial court abused its discretion in giving priority to the taxes that became due to the United States,[9] and to the State of Oklahoma and its political subdivisions,[10] during the receivership, over other operating expenses, but this contention is without merit. Taxes accruing during a railroad receivership may properly be preferred over all other claims except judicial costs.[11] No statute is necessary to create the priority,[12] which may be based wholly upon a judicial recognition of governmental need and prerogative.[13]

Appellant MKT argues that the tax claim of the State of Oklahoma and its political subdivisions ought to be denied priority as a matter of laches and estoppel, because, during the period such taxes were accumulating, from 1932 to 1938, no application was made to the court for their payment. Clearly, the mere failure of public officers charged with the duty of collecting taxes, to make application annually to the court for payment of the taxes accruing during a railroad receivership, is not such a circumstance as will defeat the state's right to priority for the accumulated taxes.[14]

The only question remaining is as to the right of appellant Eubanks' judgment for personal injuries, to priority over the other operating expenses of the receiver. Eubanks, as has already been indicated, was employed by the receiver as a brakeman, and lost both his legs in a train accident in Oklahoma. He recovered a judgment under the Federal Employers' Liability Act, against the receiver, for $18,000, in the state courts of Oklahoma. The receiver had made payments upon the judgment, until its amount was reduced to $11,644, for which his claim was allowed in this proceeding, in the fourth priority.

Two bases of Eubanks' claim to a higher priority may be disposed of summarily. The general judgment lien statute

valorem taxes in Oklahoma be and the same is hereby extended without penalty until the 15th day of June, 1931, and that the last half of the 1930 ad valorem taxes shall not be delinquent until the 1st day of September, 1931, and that no penalty shall accrue on said taxes if paid according to the provisions of this Resolution."

[8] In State of Michigan v. Michigan Trust Co., 286 U.S. 334, 344, 52 S.Ct. 512, 515, 76 L.Ed. 1136, Mr. Justice Cardozo said, "Taxes owing to the government, whether due at the beginning of a receivership or subsequently accruing, are the price that business has to pay for protection and security."

[9] These taxes were imposed under the Carriers Taxing Act of 1937, 45 U.S.C.A. §§ 261–273, for the year 1938, and under Title IX of the Social Security Act, 42 U.S.C.A. §§ 1101-1110, for the years 1936, 1937, and 1938.

[10] These were principally ad valorem taxes assessed by the State Board of Equalization of Oklahoma for the years 1932, 1933, 1934, 1935, 1937 and 1938, and, regularly certified to the several counties for levy and collection.

[11] Union Trust Co. v. Illinois Midland Ry. Co., supra; Coy v. Title Guarantee

& Trust Co., 9 Cir., 220 F. 90, L.R.A. 1915E, 211; Liberty Mutual Ins. Co. v. Johnson Shipyards Corporation, 2 Cir., 6 F.2d 752; 1 Clark on Receivers, Second Edition, 955, § 670.

[12] Since this also was the basis of the trial court's decision, and since no question of conflicting priority is here raised between the United States and the State of Oklahoma, it is unnecessary to consider the provisions of Rev.St. § 3466, 31 U.S.C.A. § 191, or the Oklahoma statutes cited.

[13] " * * * such taxes are and should be regarded by the courts as a preferred and paramount claim over all other claims, for they are essential to the existence and maintenance of the very government under which the property is acquired and protected." Coy v. Title Guarantee & Trust Co., supra, page 92 of 220 F.

[14] Compare the court's declaration in State of Michigan v. Michigan Trust Co., supra, pages 345, 346, of 286 U.S., page 515 of 52 S.Ct., 76 L.Ed. 1136: "The receiver was under a duty to pay them when they accrued, and having failed to fulfill that duty then, it should be compelled to pay them now. * * * To protect through a receiver the enjoyment of

of Oklahoma[15] does not improve his position. A provision in a state statute for a general lien upon the property of a judgment debtor will not operate to create a priority over other operating expenses in a federal court railroad receivership, as to an operating expense claim that is reduced to judgment against the receiver.[16] The judgment in such a case establishes only the existence and the amount of the receiver's liability: it does not affect the right of the receivership court to determine the priority relationships of its own operating expense claims, and to adjust the equities among all those having rights in or against the property.[17] The Arkansas statute,[18] upon which reliance also is placed, can have no possible application, since, irrespective of any other question that it might present, the Supreme Court of Arkansas has construed it as applying only to causes of action arising within the state.[19] Here, the cause of action arose in Oklahoma.

Section 77, subsection n, of the Bankruptcy Act, as amended in 1939, 11 U.S.C.A. § 205, sub. n,[20] is made the final basis of Eubanks' claim for priority over the rest of the receiver's operating expenses. We have previously declared as to the portion of this statute that is here involved, that "The purpose of this Act is to secure relief for injured employees of railroads which have gone into bankruptcy or receivership after the injury and before satisfaction of the claim therefor against the railroad".[21] Congress has merely accorded such claims, together with claims of personal representatives of deceased employees, and claims of unsecured sureties, a status as operating expenses of the railroad receivership or trusteeship.[22] It has directed that all of such claims "shall be preferred and paid out of the assets of

---

the corporate privilege and then to use the appointment as a barrier to the collection of the tax that should accompany enjoyment would be an injustice to the state and a reproach to equity."

[15] Okl.Stat.1931, § 437, 12 Okl.St.Ann. § 706. This statute contains the usual provision, making a judgment a lien upon the real estate of the judgment debtor in the county where the judgment is recovered or where a certified copy is docketed.

[16] 28 U.S.C.A. § 125 provides: "Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice."

[17] Dillingham v. Hawk, 5 Cir., 60 F. 494, 23 L.R.A. 517; Willcox v. Jones, 4 Cir., 177 F. 870; Foster v. Field, 13 Okl. 230, 74 P. 190; 1 Clark on Receivers, Second Edition, 784, § 576(a). See also Byers v. McAuley, 149 U.S. 608, 619, 13 S.Ct. 906, 37 L.Ed. 867.

[18] Crawford & Moses, Ark.Dig. 1921, § 8555, provides in part that "every person who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law * * * shall have a lien on said railroad * * * superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, and beneficiaries under trusts or owners."

[19] Chicago, R. I. & P. Ry. Co. v. Smith, 128 Ark. 223, 193 S.W. 791.

[20] Subsection n provides in part: "In proceedings under this section, and in equity receiverships of railroad corporations now or hereafter pending in any court of the United States, claims for personal injuries to employees of a railroad corporation, claims of personal representatives of deceased employees of a railroad corporation, arising under State or Federal laws, and claims now or hereafter payable by sureties upon supersedeas, appeal, attachment, or garnishment bonds, executed by sureties without security, for and in any action brought against such railroad corporation or trustees appointed pursuant to this section, shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroad."

[21] American Surety Co. v. Wabash Ry. Co., 8 Cir., 107 F.2d 685, 688. See also Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558; Powell v. Link, 4 Cir., 114 F.2d 550.

[22] In the Act of March 3, 1933, 47 Stat. 1474, § 1 amending section 77 sub. s, 11 U.S.C.A. § 205 note, claims for personal injuries to employees and claims of personal representatives of deceased employees were made "subordinate only to costs of administration of such receivership or reorganization". In the Act of August 27, 1935, 49 Stat. 911, there was no provision covering equity receiverships, and the Act of August 11, 1939, 53 Stat. 1406, 11 U.S.C.A. § 205 sub. n reenacted the provision of the 1935 Act, with the

such railroad corporation as operating expenses", and it has apparently assumed that such a general priority would ordinarily insure their payment in full. Normally, this could be expected to be the case, but, if such a situation did not result, the statute makes no provision to cover it.

 In Eubanks' case, where the injury occurred during the receivership operation, the statute, as a matter of fact, was not needed to give his claim the status of an operating expense. In any event, we find nothing in the language of the statute that requires a court of equity, as a matter of legislative command, to give claims for the personal injury or death of a railroad employee, whether arising before or during the receivership operation, a priority over other expenses of operation.

 But the absence of a legislative mandate must not be treated as an absolution of our judicial responsibility in the case. The very nature and purpose of chancery jurisdiction requires that we do not close our eyes and conscience to those natural and compelling equities which are sufficiently broad to furnish the basis for a sound governing principle in the situation presented. Thus, we have recognized above our right to give preference to the tax claims of the United States and the State of Oklahoma, over all other operating expenses of the receiver, because of their inherent nature.[23] And, in the situation which we are now considering, the unsatisfied claim of appellant Eubanks for personal injuries touches our equitable conscience with a stronger natural and social appeal, than the commercial-risk claims of joint facilities agreements, car repair bills, and kindred items which are involved.

The force and universality of this natural appeal, we believe, can hardly be denied. That which so instinctively and universally impresses itself as the natural justice of a situation must not go unheeded by a court, in dealing with those inherent and flexible values termed "equities", unless the circumstances are so individualistic in nature as to transgress the sound general principles by which the field of jurisprudence must fundamentally be marked. We find no "keep out" signs here. It should perhaps be said also that the path does not appear to bear any "markers" from past decisions, but this is not a deterrent to the step of sound conscience. The path of equity is not a dead end.

 The situation here presented is perhaps not one that will frequently arise. Usually the operating expenses of a railroad receivership can be and are paid in full. But where it is found at the close of such a receivership, as the result of unforeseen conditions, that the assets of the railroad, both income and corpus, are insufficient to pay the receiver's operating expenses in full, we believe there are such superior and compelling equities in an employee's claim for personal injuries, as to entitle a court of equity to give it priority over the general operating expenses of commercial risk.

 We therefore hold that the claim of appellant Eubanks should be allowed preferential payment over the other claims which the court placed in fourth priority, and that the judgment should be in all other respects affirmed.

Reversed as to claim of appellant Eubanks; affirmed as to claims of all other appellants.

---

words inserted "and in equity receiverships of railroad corporations now or hereafter pending in any court of the United States".

Indication of Congressional purpose in enacting the 1933 and 1939 Acts may be found in Congressional Record, 72nd Cong., Vol. 76 Pt. 5, pp. 5123, 5124 and 76th Cong., Vol. 84 Pt. 10, p. 10, 667 and in House Report 1458, Committee on

Judiciary, 76th Cong. 1st Sess., and Senate Report No. 978, Committee on Judiciary, 76th Cong., 1st Sess.

23 The general right to grant a preference where the intrinsic nature of the claim confers a superior equity is recognized in Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 8 Cir., 80 F.2d 32, 39, 102 A.L.R. 688.