## ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY ET AL. *v.* SPILLER ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 577. Argued April 12, 1927.—Decided. May 16, 1927.

1. Assuming that a shipper's claim for moneys collected from him by a railroad through excessive charges might be entitled to prefer-

ential payment from receivers of the railroad, subsequently appointed, if the moneys were traced into their hands, they are not so traced by showing that, for years which elapsed between the time of the overcharges and the transfer of the railroad property from the receivership to a new company, the old company and the receivers had at all times in banks on which checks for current expenses were drawn, an aggregate working balance largely exceeding the claim. P. 309.

2. The equitable doctrine giving preferential payment out of operating income accruing during a railroad receivership to debts previously incurred by the railroad corporation for labor, supplies, etc., does not apply to liabilities for excess charges illegally exacted of a shipper which accrued many years before the receivership began. P. 310.

3. A claim to recover excess transportation charges which arose many years before the property of the railroad making them went into the hands of receivers and passed to a new company, can not be allowed preferential payment on the ground of public policy. P. 311.

4. A provision in a decree foreclosing a railway mortgage which exempted the purchaser from paying claims not already presented in accordance with orders theretofore made, excepting claims which might "arise" after entry of the decree, is to be construed as employing the term "arise" in the sense of "accrue"; and a claim for overcharges against the mortgagor railroad arose in that sense at least as early as the time when the claimant obtained his reparation order from the Interstate Commerce Commission and not when judgment was recovered upon the order. P. 312.

5. An unsecured creditor of an insolvent railroad has no standing to attack a reorganization plan upon the ground that he was not offered an opportunity to participate, when his exclusion was due to his own failure to file his claim in the foreclosure suit within the time limited by an order. P. 313.

6. In this connection, it is immaterial that the excluded creditor had no actual knowledge of the order limiting time for filing claims, notice by publication being legally sufficient; nor did the fact that his claim was being contested in other litigation prevent him from filing it on time. P. 313.

7. Where an unsecured creditor of a railroad prosecuted his claim diligently in an independent suit before and after the railroad passed into a receivership and was sold to a new company pursuant to a plan of reorganization, during which period his suit was

55514°—28——20

resisted by the railroad, the receivers, and counsel for the new company, successively; and where, having recovered judgment after the sale, he appeared at the hearing on the order to confirm the sale and gave notice to the old company, the receivers, the reorganization committee, and the new company of his claim and that the judgment would be a charge on the property in the hands of the purchaser, notwithstanding which the new company continued defending his suit and the new securities were issued, *Held*, that the creditor was not guilty of laches; that his failure to file his claim within the time limited in the foreclosure case and thus conform to the terms of the reorganization plan, did not bar him from participating in its benefits with the other unsecured creditors, if that were still equitably possible; and that such relief might be had as well upon an intervening petition as upon an original bill. P. 314.

14 F. (2d) 284, reversed in part, affirmed in part.

CERTIORARI (273 U. S. 680) to a decree of the Circuit Court of Appeals which reversed a decree of the District Court dismissing an intervening petition in a railroad foreclosure suit.

*Mr. Frederick H. Wood*, with whom *Messrs. Edward T. Miller, Alexander P. Stewart,* and *Robert T. Swaine* were on the briefs, for petitioners.

*Messrs. Walter H. Saunders* and *David A. Murphy*, with whom *Messrs. S. H. Cowan* and *John S. Leahy* were on the brief, for respondents.

*Messrs. Edward J. White* and *Thomas T. Railey* filed a brief as *amici curiae*, by special leave of Court, on behalf of the Missouri Pacific Railroad Company.

*Messrs. North T. Gentry*, Attorney General of Missouri, and *Lee B. Ewing* filed a brief as *amici curiae*, by special leave of Court, on behalf of the State of Missouri.

*Mr. Clifford B. Allen* filed a brief as *amicus curiae*, by special leave of Court.

Mr. Justice Brandeis delivered the opinion of the Court.

In 1913, the federal court for eastern Missouri appointed receivers for the St. Louis and San Francisco Railroad. In 1916, the system was sold on foreclosure, was purchased for the Reorganization Committee and was conveyed to the St. Louis-San Francisco Railway Company, which has operated it since. In 1920, Spiller recovered in the federal court for western Missouri a judgment against the old company *in personam* for $30,212.31 and for counsel fees taxed as costs pursuant to § 16 of the Act to Regulate Commerce.[1] Thereupon, he filed in the receivership suit,[2] upon leave granted, an intervening petition praying that the judgment be satisfied out of the property so acquired by the new company. The Master recommended that the prayers of the petition be granted. The District Court denied Spiller any relief and dismissed the intervening petition without costs to either party. 288 Fed. 612. The Court of Appeals reversed the decree; remanded the case to the lower court with directions to enter a decree for Spiller in the amount of the judgment with interest but without counsel fees; declared that the judgment was prior in lien and superior in equity to the mortgages of the old company; and directed that it be enforced against the property conveyed to the new company. 14 F. (2d) 284. This Court granted the petition of the two companies for a writ of certiorari. 273 U. S. 680.

The judgment which Spiller seeks to enforce through the intervening petition was entered by the trial court

---

[1] The intervening petition and the decree cover also another judgment for $3,652.97 in favor of Spiller and others.

[2] There were in fact four suits; two brought by unsecured creditors and two by the trustees of mortgages under which the foreclosure was had. All the suits were consolidated in May, 1914.

in 1916, after the foreclosure sale and before confirmation thereof; was reversed by the Court of Appeals in 1918; and was reinstated by this Court in 1920. *Spiller* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 253 U. S. 117. It is for overcharges collected by the old company, in 1906, 1907 and 1908 under a freight tariff which had been increased in 1903 and which was held by the Interstate Commerce Commission to be unreasonable in 1905, and again in 1908. *Cattle Raisers' Association* v. *Missouri, Kansas & Texas R. R. Co. et al.,* 11 I. C. C. 296; 13 I. C. C. 418. The action in which the judgment was recovered was begun in 1914, after the appointment of the receivers. The reparation order on which the action was based was entered also after their appointment; but the petition for reparation was filed prior thereto.

The validity of the judgment as against the old company is not challenged in this proceeding. The question here is whether Spiller is entitled to have it satisfied out of the property of the new company. The railroads contend that in nature the claim is one not entitled to preferential payment; and that, in any event, Spiller is barred by laches or otherwise from obtaining any relief in this suit. The Court of Appeals held that the old company became liable as trustee *ex maleficio* for overcharges and that this liability is enforceable, as upon a constructive trust, against the property acquired by the new company on foreclosure. It held further that Spiller was not barred by laches or otherwise, because of the provision of the foreclosure decree, by which the purchaser became bound to pay, as a part of the purchase price, any unpaid claims of creditors of the old company which should be adjudged superior in equity to its mortgages, the court reserving to itself jurisdiction to determine the amount and validity of any such claim.

*First.* The contention that the judgment constitutes a lien or equity upon the property of the new company,

as upon a constructive trust, rests upon the following argument. The freight rates being unreasonable were unlawful. The shipper was obliged to pay the charges exacted, although they were unlawful, because they were the published rates. As the shipper was obliged to pay the unlawful charges the payment was made under duress. One may be held as trustee *ex maleficio* of funds obtained by duress as well as of those procured by fraud. The old company by collecting the unlawful charges became trustee *ex maleficio* of the funds collected. These can be traced and may be followed. They passed to the receivers who took the funds with notice and without paying value. Upon the foreclosure they passed to the new company. It also took them with notice and is subject to the trust, either because the shipper's equitable lien or interest was not cut off by the foreclosure sale, to one with notice, in a suit to which the shipper was not a party, or because the new company agreed to pay pursuant to the foreclosure decree claims prior in lien and superior in equity to the mortgages of the old company.

We need not consider whether, in the absence of legislation, charges illegally exacted by a carrier may be recovered under the doctrine of a constructive trust; or whether the alleged equitable remedy is applicable to overcharges subject to the Interstate Commerce Act, which provides a different remedy;[3] or whether the equitable remedy, if any, has been lost by proceeding to judgment at law. For, even if the overcharges when collected, were subject to a constructive trust in favor of the shipper, the contention that the money exacted by

---

[3] See §§ 8, 16(1), and 16(2) of the Interstate Commerce Act as it stood at the time of the overcharges in question, Act of Feb. 4, 1887, c. 104, 24 Stat. 379, 382, 384, as amended by the Act of June 29, 1906, c. 3591, 34 Stat. 584, 590. See also *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426.

the old company in 1906, 1907 and 1908 can be traced into the hands of the receivers is unfounded. The money was not ear-marked. It was mingled when collected with other money received from operation. And no special account was kept of it. The latest exaction occurred five years before the appointment of the receivers. The assertion that the money collected can be traced into the receiver's hands is confessedly without any support except the stipulated fact that, throughout the ten years which elapsed between the earliest exaction and the transfer of the properties to the new company, the old one and the receivers had, at all times, in the several banks on which checks for current expenses were drawn, a working balance, in the aggregate, largely in excess of Spiller's claim. Such a showing fails to bring the present case within the rule by which, when trust funds are mingled with others, the *cestui* may assert an equitable lien upon the mingled mass to the extent of his contribution thereto.[4] *American Can Co.* v. *Williams,* 178 Fed. 420, 423; *In re A. D. Matthews' Sons,* 238 Fed. 785, 787. An illegal exaction does not impress an indelible trust upon all funds which the wrongdoer and his successors may thereafter have on deposit in their banks. For aught that appears, all the money illegally exacted may have been spent for current operating expenses.

*Second.* Spiller contends that he was entitled to preferential payment of his judgment for the excess charges, out of operating income accruing during the receivership, on the doctrine of *Fosdick* v. *Schall,* 99 U. S. 235, 251–255. See *New York Dock Co.* v. *S. S. "Poznan,"*

---

[4] Compare *National Bank* v. *Insurance Co.,* 104 U. S. 54, 63–68; *Schuyler* v. *Littlefield,* 232 U. S. 707, 710; *United States* v. *Leary,* 245 U. S. 1, 5; *Cunningham* v. *Brown,* 265 U. S. 1, 11–13; *Southern Cotton Oil Co.* v. *Elliotte,* 218 Fed. 567, 570–571; *In re A. Bolognesi & Co.,* 254 Fed. 770; *Knatchbull* v. *Hallett,* 13 Ch. Div. 696.

*ante,* p. 117. It is argued that the test of this equity is the nature of the claim; that a liability for excess charges unlawfully exacted by the carrier before the receivership is an expense of operation like a debt incurred for labor, supplies, equipment or improvements; and that, as such, it is entitled to priority over bondholders. We need not determine whether the noncontractual claim here in suit is in its nature within the class of debts entitled to preferential payment under the doctrine of *Fosdick* v. *Schall.* For, by long established practice, the doctrine has been applied only to unpaid expenses incurred within six months prior to the appointment of the receivers. See *Lackawanna Coal Co.* v. *Trust Co.,* 176 U. S. 298, 316. Compare *Gregg* v. *Metropolitan Trust Co.,* 197 U. S. 183. The cases in which this time limit was not observed, are few in number and exceptional in character. · See *Burnham* v. *Bowen,* 111 U. S. 776, 780–783; *Union Trust Co.* v. *Morrison,* 125 U. S. 591. In no case which has come to our attention has the doctrine been applied to liabilities which, like those here in question, accrued many years before the receivership began.

*Third.* Preferential payment is urged also on the ground of public policy. The argument is that the carrier is invested through its franchise with a part of the sovereign power; that in the exercise of the power conferred the old company exacted illegal rates which the shipper was obliged by law to pay; that when the old company's property passed into the hands of the court it was augmented by the illegal exactions; that it became the court's duty to make restitution; and that, having failed to do so while the property was in its hands, the court may require payment from the new company. It may be assumed that this claim for overcharges is meritorious in character; but the fact that it arose many

years before the appointment of the receivers is conclusive against including it among those entitled to preferential payment.

*Fourth.* In order to establish as against the new company either the alleged equity or a right to preferential payment, it was moreover assumed to be necessary that the claim should be one of those which the purchaser, under the decree of foreclosure, agreed to pay, as part of the purchase price. The decree provided that the purchaser would not be required to pay any " claim or demand which has not been presented in this cause in accordance with the orders heretofore made requiring presentation thereof" unless it be " a claim or demand which may arise after the entry of this decree." An interlocutory decree had ordered that all claims be presented before February 1, 1916 or be barred of enforcement against the property in the hands of the receivers or the proceeds thereof. Due notice of the order had been given by publication. Spiller did not file his claim within the time limited. He contends that the time limit has no application to his claim, because it arose after entry of the decree.

The argument is that, while the claim accrued in 1914, when the reparation order was entered, or earlier, when the overcharges were illegally collected, it did not " arise " until 1920, when this Court, reversing the Court of Appeals, reinstated the judgment sought to be enforced by the intervening petition; that, in this connection, the term " arise " must have been used by the District Court in a sense different from " accrue." For, knowing through its receivers, that their counsel were, at the time of the entry of the decree of foreclosure, hotly contesting Spiller's claim, and that he was asserting that it was superior in equity to the mortgages to be foreclosed, and knowing also that the claim had not been filed in the receivership suit, the court must have intended that, if

Spiller ultimately prevailed, his claim should be satisfied by the new company.   Unless so construed, the provision for claims which may " arise " after the decree would be practically inoperative.   The argument is not persuasive. We are of opinion that the term " arise " was used in the decree as the equivalent of " accrue "; that Spiller's claim arose at least as early as 1914, when the reparation order was entered, not when the judgment was recovered; and that the new company did not assume to pay it.   See *Phillips* v. *Grand Trunk Ry. Co.,* 236 U. S. 662, 666. Moreover, while the barring clause of the final decree excepted claims arising after entry thereof, the clause stating the liability of the purchaser included only claims against the old company which should be adjudged prior in equity to the old company's mortgages.   We have already decided that the claims in question are not of such a character.

*Fifth.*   Spiller contends also that he is entitled, under the doctrine of *Northern Pacific Ry. Co.* v. *Boyd,* 228 U. S. 482, to require the new company to satisfy in full his judgment against the old.   The argument is that, under the reorganization plan, stockholders of the old company were allowed to participate in the new, but that he, a creditor, was not offered an opportunity to do so. There is no evidence in the record which supports the assertion that Spiller was not afforded an opportunity of participating in the reorganization.   The contrary appears.   The order confirming the foreclosure recites that " a fair and timely offer of cash  .  .  .  or participation " was made to those unsecured creditors who had filed claims.   Spiller did not file his claim.   The fact that he did not have actual knowledge of the order limiting the time for filing claims is not material in this connection.   Notice by publication was legally sufficient. The mere fact that his claim was contested did not exclude him from the scope of the order.   He might have

filed it although he was litigating elsewhere. He cannot bring himself within the doctrine of the *Boyd* case by showing that no offer was made to him personally. For aught that appears an offer would have been made, or his rights otherwise preserved, if he had filed his claim. There is no occasion to consider whether a petition for intervention filed in the receivership proceedings four years after confirmation of the foreclosure sale is an appropriate method of enforcing the claim on this theory.

*Sixth.* While the Court of Appeals erred in granting the specific relief prayed in the petition for intervention, it does not follow that Spiller must be denied all remedy. He was guilty of a serious inadvertence in not filing his claim in the receivership suit within the time limited by the interlocutory order. But it is clear that he has not been guilty of laches. *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 488–490. And it does not appear that his inadvertence misled in any way the court, the receivers, the Reorganization Committee or the new company. He had prosecuted his claim with vigor for years before the receivers were appointed. His diligence does not appear to have slackened either during the receivership or after the foreclosure sale. Throughout the whole period, the claim appears to have been resisted with equal vigor. After the old company ceased to function, counsel for the receivers conducted the defense. After the receivers ceased to function, counsel for the new company conducted the defense. It is clear that neither the receivers nor the new company considered the failure to file the claim in the receivership a bar to the relief.

Before Spiller recovered judgment in the trial court, the sale on foreclosure was had; but the hearing on the order to confirm the sale was yet to be held. At that hearing Spiller gave, before the confirmation of the sale, notice in open court, and otherwise to the old company, to the receivers, to the Reorganization Committee and

to the new company, that he had recovered judgment fourteen days before. He notified them that he claimed that the purchaser would take the property subject to all his rights; and that these included a charge upon the property in the hands of the purchaser for full payment of the judgment. With knowledge of Spiller's claims, the Reorganization Committee and the new company took over the property. Later, the new company assumed the further defense to the action in which the judgment had been recovered. The issue of the securities of the new company and the distribution of its stock among stockholders in the old occurred after these notices of Spiller's claim had been given. Under such circumstances, neither the long delay, nor the failure to file claims as required by the interlocutory and final decrees, should operate to prevent the appropriate relief; [5] and the District Court had jurisdiction to grant it. Compare *Julian* v. *Central Trust Co.*, 193 U. S. 93; *Wabash Railroad* v. *Adelbert College*, 208 U. S. 38, 54–57.

The new company contends, that since the shipper's claim was not filed within the time limited by the interlocutory decree, it was among those declared barred by the terms of the final decree; and that by intervening he estopped himself from obtaining any relief. [6] No good reason is shown why relief may not be had as well upon an intervening petition as upon an original bill. As this may be done, he should be put, as nearly as may be consistently with the rights of others, into the position which he would have occupied had he filed his claim in the

---

[5] See *Williams* v. *Gibbes*, 17 How. 239, 254–257; *Park* v. *New York, L. E. & W. R. R. Co.*, 140 Fed. 799; *Employers' Assur. Corp.* v. *Mahogany Co.*, 6 F (2d) 945. Compare *Farmers' Trust Co.* v. *Chicago, etc., R. R. Co.*, 118 Fed. 204; *Western N. Y., etc. Ry. Co.* v. *Penn Refining Co.*, 137 Fed. 343.

[6] Compare *Swift* v. *Black Panther Gas Co.*, 244 Fed. 20; *Commercial Electrical Supply Co.* v. *Curtis*, 288 Fed. 657.

receivership proceedings in the proper time. It does not appear that it is not possible for the new company to give him the benefit now of the offer which was made by the Reorganization Committee to the other unsecured creditors of the old company; nor that such a course would be inequitable to others in interest. The ascertainment of the relevant facts and the precise form of the relief must be left to the District Court. The decree of the Circuit Court of Appeals is affirmed in so far as it reversed the decree of the District Court dismissing the intervening petition; and is reversed in so far as it directed that the judgment is a prior lien enforceable for the full amount exclusive of counsel fees against the property of the new company.

*Decree affirmed in part, and reversed in part.*