**PETTIBONE-MULLIKEN CO. v. GUARANTY TRUST CO. et al.**

Circuit Court of Appeals, Eighth Circuit.
April 18, 1928.

No. 7974.

1. Receivers ⊂═160—Claim for materials furnished more than six months immediately preceding appointment of receiver held not entitled to preference over mortgage lien.

Claim for materials furnished railroad prior to period of six months immediately preceding appointment of receiver for railroad held not entitled to preference over mortgage lien, in absence of showing special equity or particular circumstances constituting exception from six-months rule.

2. Receivers ⊂═150—Claimant has burden of showing special equity authorizing preference for materials furnished prior to six-months period immediately preceding appointment of receiver.

Claimant, having furnished materials to railroad prior to period of six months immediately preceding appointment of receiver, in order to obtain a preference over mortgage lien, has burden of showing right thereto because of some special equity growing out of facts of case, precluding application of six-months rule.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit by the Guaranty Trust Company against the Minneapolis & St. Louis Railroad Company, consolidated with a creditor's suit previously filed against defendant, and wherein the Pettibone-Mulliken Company filed a claim. From an order confirming the master's report, denying preference to a part of the claim, claimant appeals. Affirmed.

Kemper K. Knapp, of Chicago, Ill. (Knapp & Campbell, of Chicago, Ill., on the brief), for appellant.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, Davis, Severance & Morgan, of St. Paul, Minn., Edwin S. S. Sunderland, of New York City, and Warren S. Carter, of St. Paul, Minn., for appellees.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. Appellant sold and delivered to Minneapolis & St. Louis Railroad Company between November 17, 1920, and July 7, 1923, steel articles and structures needful in the repair and upkeep of its railroad, consisting of railroad crossings, switch stands, castings for switch stands, plates, braces, connecting rods, split switches, switch points, gauge plates, angle bars, frogs, tie rods, roller pins, bolts and clamp frogs. After a receiver was appointed for the railroad appellant intervened and asked that its entire claim in the sum of $87,661.78 be allowed and given a preference in payment. This is an appeal from an order denying a preference for all articles and material furnished more than six months prior to receivership.

A creditor's suit was filed against the railroad company on July 26, 1923, in which it was alleged that the company was insolvent, that it was indebted in excess of $42,000,000, secured by mortgages on its property and was also indebted in a large amount on equipment trust obligations and that it owed in excess of $3,500,000 on bills payable, audited vouchers, unpaid wages, traffic and car service balances, for supplies and other operating obligations. It was prayed that a receiver be appointed to operate the property and that the court determine the priority of all claimants, including lien holders. The defendant in its answer admitted the allegations of the bill and a receiver was appointed on the day the bill was filed. Thereafter on August 20, 1923, by leave of court, the Guaranty Trust Company of New York, Trustee in the Refunding and Extension Mortgage given by the railroad company of date January 1, 1912, filed its bill of foreclosure asking that the mortgage be declared a valid and subsisting lien on all the property conveyed in the mortgage and upon the earnings, income and profits of the company, that a sale be had under decree of court to pay the mortgage debt and for that purpose its income and earnings be segregated and impounded and a receiver appointed. The court on the day this bill was filed appointed the same receiver that had

been appointed in the creditor's suit and consolidated the two suits. The court also appointed a special master to ascertain and report on all claims (except those secured by mortgage) against the railroad company, the liens and priorities of creditors and the preferences in payment, if any, to them, and ordered that all persons having claims upon the funds or property in the hands of the receiver should file verified statements thereof with the receiver on or before a named date; and that persons filing such claims should have the right to contest the claims of others. On March 1, 1924, a supplemental bill was filed in the creditor's suit, alleging that the railroad company, prior to the appointment of the receiver, had appropriated sums of money from its earnings derived from operation to the payment of principal and interest on various capital obligations and interest on mortgage indebtedness, that unsecured creditors were claiming a lien against the net earnings of the receiver and a lien on the corpus of the railroad properties prior to mortgage indebtedness to the extent of the diversion of income; that earnings had been expended in the creation of additions and betterments to the mortgaged property and current income had been paid by the receiver on principal and interest of equipment trust obligations and interest on the funded debt of the company, and creditors asserted a lien against the mortgaged premises to the extent of all such diversions, prior in right to the mortgage liens. They prayed that an account be taken to ascertain the diversions and that to the extent thereof the claims of general creditors be adjudged superior in right to the claims of mortgagees. By order the court extended to all creditors the benefit of the allegations of the creditor's bill without the necessity on their part of expressly intervening in the cause. Thereafter six other mortgagees filed their bills of foreclosure and they were consolidated with the two cases that have been mentioned. All mortgagees resisted the claims of general creditors to preferences.

The master heard, considered and made his report on the claims of all creditors. He applied what is known as the six months' rule, that is, he allowed creditors for labor and necessary supplies furnished within six months prior to the appointment of the receiver a preference in payment out of railroad assets and adjudged them to be equitable liens prior in right to the mortgage liens; but for all supplies and labor furnished more than six months prior to the appointment of the receiver their claims were allowed as general unsecured claims, sharing in the company's assets pro rata after all mortgage and other liens should be fully discharged.

The mortgage trustees conceded that during the time covered by appellant's claim for supplies furnished interest was paid by the railroad company on outstanding mortgage indebtedness to an amount at least equal to the amount of the general claims. The master found there had been a diversion of earnings from the payment of current operating expenses to the payment of interest on various issues of mortgage bonds and the payment of principal and interest on various equipment trust notes and other obligations of the company and for capital account expenditures; and that the supplies and materials furnished by appellant as set forth in its claim were sold to the railroad upon the expectation of the claimant and the intent of the railroad company that they should be paid for out of its current operating income. He further found that the supplies and materials thus furnished contributed directly to the current earnings of the property to the benefit and advantage of the mortgage creditors and were not in excess of the normal requirements of the railroad company, that in fact they were necessary to daily operation and to the continuance and maintenance of its business, and hence were current operating expenses in the operation of the road. He attached to his report a memorandum, wherein he reviewed at length the authorities which applied or had occasion to recognize the so-called six months' rule, citing therein the Fosdick and Kneeland Cases (99 U. S. 235, 25 L. Ed. 339; 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379), other cases in the Supreme Court and many in the Circuit and District Courts. From an order confirming the master's report this appeal was taken.

[1] That part of appellant's claim for materials that were furnished to the railroad company within six months prior to receivership was allowed as a preference. It is claimed here that the court erred in denying a preference to that part of the claim allowed for materials furnished prior to the period of six months immediately preceding the appointment of the receiver. Counsel for appellant in his brief puts the question: "Should the amount of time expiring between the sale of materials to a railroad company and the appointment of a receiver for a railroad company have any effect upon the right of materialmen to preferential payment for their materials?" Then, relying upon Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 S. Ct. 347, 44 L. Ed. 458, he says:

"There is no absolute six months' rule of limitation upon the rights of materialmen for preference." And he argues that the question should be answered in the negative. He reverts to the reasons assigned by courts of equity for giving a preference to those who furnish necessary supplies to railroad companies over mortgage liens, viz.: The supplies are indispensable to keep the railway going, they contribute to the production of the income of the railroad, and equitably the income ought to pay for the supplies; therefore every railroad mortgagee by implication in equity agrees that the current debts incurred for such supplies (no matter when they were furnished) shall be paid from current receipts before the mortgagee has any claim on the income; and if the income is applied to payment of other debts it should be taken out of the mortgaged property and handed over to the claimant who furnished the needed supplies, to the extent of his claim. The inevitable sequence of the argument, stated more elaborately than we put it, is an abolition of the six months' rule. We say *abolition* because it cannot be doubted that there is such a rule. In short, the sum of the argument is, in effect, that the six months' rule is in conflict with the fundamental equitable rights of labor and material claimants as they are defined in the Fosdick and Carnegie Steel Company Cases, and therefore the rule must yield. We do not say that there may not be exceptions to the rule, arising from the facts in a particular case. But that is not the argument here. The contention is rather an attack on the rule itself, than that this case presents an exception to it. No special circumstances are relied on to induce us to hold this to be an exception; and we think there are none. The sales during the six months consisted of fourteen invoices and those prior thereto of ninety-six invoices. Each was billed to the railroad company on delivery, payable in thirty days; so that part of the debt allowed as a general claim had matured, in instalments, over a period of two years, each more than six months prior to the appointment of the receiver. It is the ordinary case of a slow debtor, who fails to pay his bills when due; and an indulgent creditor who sells more goods, and extends further and additional credit. In Kneeland v. American Loan Co., 136 U. S. 89, 97, 98, 10 S. Ct. 950, 953 (34 L. Ed. 379), it is said:

"Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. * * * It is the exception and not the rule that such priority of liens can be displaced."

We said in Westinghouse Air Brake Co. v. Kansas City So. Ry. Co., 137 F. 26, 40, that such a claimant must show that he has exercised reasonable diligence:

"But the class of claims is very limited which may be permitted to displace the contract lien of a prior mortgage, and those who would enforce them must act in good faith and exercise reasonable diligence. * * * Mortgage bondholders have the right to the payment by the mortgagor of the current expenses of the operation of the railroad by their debtor with reasonable promptness. The reason that six months is approximately the limited time within which preferential claims must accrue is that there is usually an interval of six months between the dates when instalments of interest upon the bonds fall due, and the mortgages generally provide, and the warranted inference is, that, when an instalment of interest is paid, current expenses to that time have either been paid, or funds to pay them have been lawfully provided."

It was further said in the Westinghouse Case:

"The cases in which special circumstances have induced courts to prefer claims which accrued more than six months before the appointment of receivers, and in which extensions of times of payment have not proved fatal, are not out of mind. But those decisions were induced by the peculiar equities of the respective cases, and the fact remains that the general rule is that the time within which claims which are entitled to payment out of the income or proceeds of the mortgaged property in preference to the mortgage debt must accrue is six months preceding the impounding of the income and the seizure of the property by the mortgagees."

Again, in commenting on the rule, we said in Love v. North American Co., 229 F. 103, 107:

"The test of the preferential equity of a claim is its consideration. If its consideration was a current expense of the ordinary operation of the property of the mortgagor incurred in the usual course of its business, for labor, supplies, and like things, necessary for the operation of the railroad, within a limited time, usually not exceeding six months anterior to the appointment of the receiver, the claim may be preferred in payment, otherwise it may not be."

We again applied the six months' rule in Trust & Savings Bank v. North Platte Irr. Co., 219 F. 438, and in W. U. Tel. Co. v. U. S. & Mexican Trust Co., 221 F. 545. More than forty years ago Circuit Judge Brewer of this circuit fixed a limitation of six months prior to the receivership for such preferences, and the Supreme Court, in the Carnegie Steel Co. Case, 176 U. S. 292, 293, 20 S. Ct. 347, 44 L. Ed. 458, quoted with apparent approval his ruling in that respect. The Supreme Court, in speaking of this rule in St. L. & S. F. R. Co. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060, said: "The cases in which this time limit was not observed are few in number and exceptional in character." It has been applied by the courts in other circuits. In the Fifth Circuit, in Texas Co. v. International & G. N. R. Co., 237 F. 921; in the Fourth Circuit by Circuit Judge Simonton in National Bank of Augusta v. Carolina K. & W. R. Co. (C. C.) 63 F. 25; in the Sixth Circuit in International Trust Co. v. T. B. Townsend Brick & Contracting Co., 95 F. 850, and by Circuit Judge Taft in Thomas v. Cincinnati N. O. & T. P. Ry. Co., 91 F. 195, 198; in the Eighth Circuit by Circuit Judge Sanborn in North American Co. v. St. L. & S. F. R. Co. (D. C.) 288 F. 612, 631, 632. Numerous additional cases bearing on the point will be found in those that have been cited. The subject is discussed at length in Tardy's Smith on Receivers, vol. 1, § 416 et seq.

[2] It is sufficient to add to what has already been said that the burden is on a claimant to show that because of some special equity growing out of the facts of the case he is not bound by the six months' rule, and we find no special facts or circumstances in this record. In the Carnegie Steel Co. Case it was held that a claimant is not entitled to a preference "simply because that which he furnished to the company prior to the appointment of the receiver was for the preservation of the property and for the benefit of the mortgage securities."

Affirmed.