**DICTAPHONE SALES CORPORATION v. POWELL et al.**

No. 3803.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1935.

Charles S. Grant, of Norfolk, Va. (Henry Bowden, of Norfolk, Va., on the brief), for appellant.

B. P. Holland, Jr., of Norfolk, Va. (W. R. C. Cocke, of Norfolk, Va., and Harold J. Gallagher, of New York City, on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and McCLINTIC, District Judge.

McCLINTIC, District Judge.

Receivers were appointed for the Seaboard Air Line Railway Company on the 23d day of December, 1930, by the District Court of the Eastern District of Virginia in an equity cause therein pending.

There is, in the adjudged and controlling cases, a well-known and long-established rule called the "six-months rule," under which certain classes of claims against a railway company which arose for purchases of equipment during the period of six months prior to the appointment of receivers are required to be paid out of current earnings. However, there are many exceptions to the rule, and many controversies arise over these claims. Then again, under special circumstances and equities, a claim is sometimes allowed to be so paid, out of current earnings, which was incurred prior to the beginning of the six months' period.

The controversy for decision here raises the questions:

First. Whether the greater part of the claim here demanded was legally incurred before or after the beginning of the six months' period, and if before, whether there are certain special equities which would require the payment of the claim of the appellant out of current income.

Second. Regardless of the question whether the indebtedness was incurred in or out of the six months' period, was the purchase made upon the personal credit of the buyer?

Third. Likewise, was it a capital investment, or merely a current expense?

After the appointment of such receivers, the appellant filed a claim for the sum of $6,206.18 in such cause, claiming that there was due it the larger part of such sum of money for certain machines called dictaphones, and some equipment therefor, which had been sold and delivered to the railway prior to the appointment of the receivers, and claimed by the receivers to be prior to the beginning of the six months' period, and for the balance of such sum of money for machines sold to the railway after the beginning of the six months' period.

The appellant further claimed that these machines were of such character and had been so delivered under such circumstances

and conditions that the amount due therefor should be paid by the receivers out of the earnings of the railway, and that this claim constituted an equitable lien upon such earnings prior to the rights of the bondholders under the various mortgages on the railway.

The receivers denied that there was any liability upon them as such or upon the earnings of the railway in their hands for this particular claim, and then it was referred to a special master, who heard the testimony offered by either side and made a finding of fact and a conclusion of law thereon, which wholly denied the claims of the appellant. Seasonable exceptions were taken to the report of the master; and such exceptions were later heard by the court and were overruled, and the report was confirmed.

From the decree confirming the report, this appeal has been taken.

The findings of fact were that some time prior to the 20th day of May, 1930, the railway company had tested certain dictaphones of appellant, and it had likewise tested certain dictaphone machines of the Ediphone Company, a competitor in the same business, and had decided to purchase the machines of the appellant. It notified the appellant of its decision about the 21st day of May, 1930. The appellant's machines were already stored in a part of the railway's building, and upon the decision of the railway to take the machines of appellant, the machines of the Ediphone Company were removed and the appellant installed its machines in the offices of the railway, commencing to do so on or about the 21st day of May, 1930.

At a meeting of the representatives of appellant and the railway on the 21st day of May, 1930, the railway agreed to purchase, and the appellant to sell, thirty-five of appellant's machines, and a few days later the railway decided to purchase an additional machine, thus making a total of thirty-six.

The thirty-five machines were installed immediately thereafter, and the thirty-sixth a short time later, and all of them were installed prior to the beginning of the six months' period, which commenced on the 23d day of June, 1930.

When the representatives of the parties met, on the 21st day of May, it was the intention of appellant that the railway should purchase the machines under one of appellant's contracts reserving title thereto as security for the payment of the purchase price. The railway's representative objected to this, and the appellant waived the requirement of such contract and agreed to sell the machines outright and to reserve no lien thereon, and to accept the railway as its debtor upon the railway's own personal credit, and no further or other security was required of the railway.

Later, during the six months' period, before the appointment of the receivers, the railway purchased from the appellant three additional machines upon the same conditions.

There is a dispute as to the date of the first sale. The appellant claimed that in the usual course of business there was no real sale to the railway until its purchasing agent should issue a formal order for the purchase of the machines, and that the sale thereof would not be really completed until this had been done. It is agreed that such order was not actually sent by the purchasing agent to the appellant until the 17th day of July, 1930, and the appellant claims that such date was the actual date of sale of such machines.

The master, in view of the fact that the representatives of each company, who had full authority to arrange the terms of sale, did, on the 21st day of May, 1930, meet and agree upon such terms, found that on that date the appellant did sell and the railway did buy the thirty-five machines, which were already in another part of the railway's building, and in view of the further fact that the appellant began immediately to install the machines and completed such installation within a very few days, found that the contract of sale, and purchase thereof, was duly and fully completed in the month of May, 1930, and that the title of such machines at that time passed to the railway. The same conclusion is reached as to the thirty-sixth machine, which was purchased and delivered a few days later than the other machines.

The railway agreed to pay for these machines at the rate of $413 per month, the first monthly payment to be made on the 1st day of June, 1930, until the total price thereof had been paid in full, and on the 30th day of July, 1930, the railway did make a payment for two months, being the sum of $826, and this sum was received by the appellant and duly credited.

If all the payments had been made according to the contract, it would have re-

quired about sixteen months to have made the full payment for such machines.

The master found, first, that the thirty-six machines had all been delivered, and the title of the same having passed to the railway, the part of the claim of appellant for the balance of the purchase price of such machines would not come within the six months' limitation.

Second, that the property involved in appellant's claim was sold on the personal credit of the railway.

Third, that it constituted a capital investment, rather than an operating expense.

The District Court found, and so decreed:

First, that all these machines were sold upon the personal credit of the railway.

Second, that the greater part of appellant's claim accrued more than six months before the appointment of the receivers, and that there was a total lack of evidence showing any special circumstance that would justify the court of equity in departing from the six months' rule.

Third. It was not considered necessary to discuss or decide the question of whether or not the purchase of the dictaphones was a capital investment, or merely a current expense.

As to the finding of fact, there seems to be no real dispute, and the question before this court is, What is the law applicable to such state of facts?

The appellant claims that the real contract for the sale of the thirty-six machines was not entered into until the 17th day of July, 1930, when the purchasing agent of the railway issued his formal purchase order. We agree with the finding of fact made by the master, and hold that the sale of the thirty-six machines was made and became the property of the railway in the month of May, 1930. They were sold then to the railway, delivered then to the railway, possession thereof was taken by the railway, and the agent of appellant reported to appellant those facts and claimed his commission upon the sale made in May. This holding necessarily puts the sale thereof many days before the beginning of the six months' period.

It is strenuously claimed by the appellant that there are certain special circumstances which would justify a court of equity in departing from the six months' rule in this case.

The most recent decision of the Supreme Court, and the only one relating to priorities in railroad receiverships since 1900 is St. Louis & S. F. R. Co. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060, decided in 1927. The court said (274 U. S. 304, 311, 47 S. Ct. 635, 637, 71 L. Ed. 1060) : "We need not determine whether the non-contractual claim here in suit is in its nature within the class of debts entitled to preferential payment under the doctrine of Fosdick v. Schall. For, by long established practice, the doctrine has been applied only to unpaid expenses incurred within six months prior to the appointment of the receivers. See Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 316, 20 S. Ct. 363, 44 L. Ed. 475. Compare Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 S. Ct. 415, 49 L. Ed. 717. The cases in which this time limit was not observed are few in number and exceptional in character. See Burnham v. Bowen, 111 U. S. 776, 780–783, 4 S. Ct. 675, 28 L. Ed. 596; Union Trust Co. v. Morrison, 125 U. S. 591, 8 S. Ct. 1004, 31 L. Ed. 825."

In Westinghouse Air Brake Co. v. Kansas City Southern R. Co. (C. C. A.) 137 F. 26, 40, the court set forth the reason for the six months' limitation as follows : "The approval of the extensions of the times of payment of preferential claims by agreements between the debtor and the claimants which are not placed of record and are generally unknown to the bondholders and their trustees would enable simple contract creditors to pile up large debts of the mortgagor secured by secret liens paramount to railroad mortgages, would permit them to thus impair the security and to evade the legal effect of the contracts contained in the mortgages, and, by concealing the actual defaults of the mortgagor, would allow them to indefinitely deprive the bondholders of the possession and application of the property to the payment of their bonds and coupons until their security might be practically destroyed."

In North American Co. v. St. Louis & S. F. R. Co. (D. C.) 288 F. 612, 633, Circuit Judge Sanborn said: "The enforcement of a rule limiting the allowance of preferential claims of this character to those incurred within that time [six months] is both reasonable and necessary to the protection of claims secured by prior recorded mortgages and liens. Preferential claims of this class are not of record

—are generally incurred without notice to or the knowledge of the holders of prior recorded liens. If during longer periods than six months, if during many more months or during years, the mortgagor and its unsecured creditors may continue to create such preferential liens, they can thus pile up large debts of the mortgagor secured by secret liens paramount to the liens of the mortgages and of other recorded liens upon the property of the mortgagor; by paying the interest, or causing it to be paid, on the bonds secured by the prior liens meanwhile, they can deprive the bondholders of the possession and application of the property to their claims until their security is destroyed or so impaired that their wiser course may be to abandon the property to the holders of such secret preferential claims. It was to prevent such results that this limitation was established, and it is a just and equitable one. Westinghouse Air Brake Co. v. Kansas City Southern Railway Co., 137 F. 26, 40, 71 C. C. A. 1, and cases there cited."

The equitable claim of the appellant seems to be mainly based on the assertion that the dictaphones took the place of various stenographers and saved the railway $413 per month in wages for laborers, and that this fact makes this amount demanded an equitable lien on the current earnings during the sixteen months necessary to liquidate it, and that it claimed that the labor of these stenographers, if they had been retained, would have been a current item of expense and entitled to priority.

It is true that when the purchasing agent sent his formal order to the appellant, a voucher for the payment of $826 being the amounts due for June and July, followed in a reasonable time. It is also true that a period of five months elapsed before the appointment of receivers, and no payment of these monthly installments was made during that period.

Without discussing this question further, we agree with the master and the learned judge below that this was not such a special circumstance as to require a court of equity, in its judicial discretion, to allow appellant its claim beyond the six months' time, and we are of opinion that the refusal to relax the six months' rule was plainly right.

The other point decided by the court below in confirming the master's report was that the appellant relied upon the personal credit of the railway company, rather than the right to reimbursement out of current income. The learned judge used the following language: "It is apparent from the evidence that these dictaphones were sold upon the personal credit of the railway company. The unusually long period of credit extended to the railway by the Dictaphone Company when considered along with the conversations that took place between the representatives of the two companies leading up to the consummation of the sale, can leave very little doubt on that question. That this conclusion is sound is further emphasized by the fact that the Dictaphone Company intended to insist on the execution of a conditional sale-title reserved contract, and consented to waive that requirement because it considered the credit of the railway company to be good."

In the case of Southern Railway Co. v. Carnegie Steel Co., 176 U. S. 257, 20 S. Ct. 347, 358, 44 L. Ed. 458 (much quoted and relied upon by appellant) the court said: "Whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction."

In Thomas v. Western Car Co., 149 U. S. 95, 13 S. Ct. 824, 831, 37 L. Ed. 663, priority was denied, among other reasons, because the claimant contracted "upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity."

In Virginia & Alabama Coal Co. v. Central Railroad & Banking Co., 170 U. S. 355, 18 S. Ct. 657, 662, 42 L. Ed. 1068, the court said that to be entitled to priority it was essential "that the sale was not made simply upon personal credit, but upon the tacit or express understanding that the current earnings would be appropriated for the payment of the debt."

The finding of fact of the master, and his conclusion of law, and its affirmation by the learned District Judge, is conclusive upon this point.

This finding likewise applies to the purchase of the three machines during the six months' period.

The evidence conclusively supports the finding that the sale of these machines was upon the personal credit of the railway company.

The learned judge below did not deem it necessary to pass upon the question whether these goods purchased were for capital account or current expense, and therefore we express no opinion upon the subject.

Therefore, it follows that the decree below is affirmed.