RENDERED:  SEPTEMBER 25, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1625-MR

SUSAN BEWLEY, INDIVIDUALLY
AND AS EXECUTRIX OF THE ESTATE
OF GLORIA FRANCES DORRIS;
GEORGE ENSOR; ROGER ENSOR;
AND WILLIAM SCHWANK                                        APPELLANTS


APPEAL FROM DAVIESS CIRCUIT COURT
v.                    HONORABLE JAY A. WETHINGTON, JUDGE
ACTION NO. 17-CI-01267


DEBORAH FAYE HEADY,
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE
OF LARRY RUSSELL DORRIS;
PHILLIP RUSSELL LUALLEN;
AND EMBRY LYNN LUALLEN                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KRAMER, AND TAYLOR, JUDGES.

KRAMER, JUDGE: The issue before us is whether the Daviess Circuit Court erroneously dismissed the above-captioned Appellants' claim of "equitable recovery of assets" against Appellees pursuant to Kentucky Rule of Civil Procedure (CR) 12.02(f) for failing to state a claim upon which relief may be granted. We conclude that it did not. Accordingly, we affirm.

Before we turn to the merits of Appellants' arguments, we note that in contravention of CR 76.12(4)(c)(v), they do not have a preservation statement at the beginning of each argument, and they make no citations to the record whatsoever. CR 76.12(4)(c)(iv) and (v) require ample references to the record supporting each argument. The Court recently addressed these issues in *Curty v. Norton Healthcare, Inc*., 561 S.W.3d 374 (Ky. App. 2018). Given the length at which the Court in *Curty* urged compliance with CR 76.12(4)(c), we quote the rationale for the rule and the Court's warnings that leniency should not be presumed.

> CR 76.12(4)(c)[ (v) ] in providing that an appellate brief's contents must contain at the beginning of each argument a reference to the record showing whether the issue was preserved for review and in what manner emphasizes the importance of the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will

-2-

entertain an argument not presented to the trial court. (citations omitted).

*Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990) (quoting *Massie v. Persson*, 729 S.W.2d 448, 452 (Ky. App. 1987)). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). . . .

. . . .

**Failing to comply with the civil rules is an unnecessary risk the appellate advocate should not chance**. Compliance with CR 76.12 is mandatory. *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010). Although noncompliance with CR 76.12 is not automatically fatal, we would be well within our discretion to strike Curty's brief or dismiss her appeal for her attorney's failure to comply. *Elwell*. While we have chosen not to impose such a harsh sanction, we strongly suggest counsel familiarize himself with the rules of appellate practice and caution counsel such latitude may not be extended in the future.

*Curty*, 561 S.W.3d at 377-78 (emphasis added).[1]

---

[1] Regarding the ongoing problem of noncompliant briefing, we also direct counsel's attention to *Clark v. Workman*, 604 S.W.3d 616 (Ky. App. 2020).

As in *Curty*, although we would be well within our discretion to strike the Appellants' brief, we have chosen not to do so *at this time.* A cursory caselaw search does not reveal that counsel has previously been warned about deficient briefing. Accordingly, we hereby caution counsel that we may not be so lenient in the future. We now turn to the merits of the case.

When reviewing appeals of CR 12.02(f) dismissals, we take as true the allegations contained in the complaint. In that regard, the relevant allegations of the amended complaint filed by Appellants in this matter are as follows:

## BACKGROUND FACTS

1. Gloria Frances Dorris (referenced herein as "Gloria") and Larry Russell Dorris (referenced herein as "Russell") were previously married to one another. During the term of their marriage, Russell became familiar with the loving relationships of Gloria and her children – Susan, George, Roger, and William.

2. Gloria and Russell were divorced by Order of the Ohio Circuit Court on or about July 7, 1998.

3. Since the time of their divorce, Gloria and Russell maintained a close relationship to one another, as evidenced by a number of facts, including, but not limited to, (a) Gloria attended medical appointments with Russell, (b) Gloria and her children being listed as beneficiaries on Russell's life insurance, and (c) Gloria being the first person nominated in Russell's February 15, 2017 Last Will and Testament to serve as his Executrix.

4. On April 27, 2017, Russell broke into Gloria's home in the middle of the night. After entering Gloria's home,

Russell murdered Gloria. Russell then took his own life later that same day in Gloria's home.

5. On May 2, 2017, [Susan Bewley] was appointed to serve for Gloria's estate.

6. On June 27, 2017, [Deborah Faye Heady] was appointed to serve for Russell's estate.

7. Russell had certain assets available to him during his lifetime that, upon his death, passed outside the probate process (the "Non-Probatable Assets"). The Non-Probatable Assets could have been accessed, liquidated, and used by Russell during his lifetime for any lawful purpose. Upon his death, the recipients of the Non-Probatable Assets were Deborah, Phillip [Russell Luallen], and Embry [Lynn Luallen].

Based on these allegations, Gloria's estate asserted a wrongful death claim against Russell's estate, and Gloria's children (*i.e.*, Susan, George, Roger, and William) asserted intentional infliction of emotional distress claims against Russell's estate. And, with respect to Russell's children (*i.e.*, Deborah, Phillip, and Embry), Appellants collectively asserted the following claim – the validity of which is the sole issue in this appeal:

## COUNT VI – EQUITABLE RECOVERY OF ASSETS

22. Plaintiffs restate, reiterate, and incorporate each of the preceding paragraphs of this Amended Complaint as if fully restated herein.

23. Had Russell lived through the trial of this action, the Non-Probatable Assets would have been available to satisfy a judgment against Russell.

24. By operation of Russell's death, the Non-Probatable Assets owned by Russell during his lifetime passed outside the probate process and the control of Administratrix [(*i.e.*, Deborah)].[2]

25. According to Administratrix, the Non-Probatable Assets owned by Russell which could have been liquidated during his lifetime were as follows: (a) a John Hancock Annuity Account (account number ending in 7); (b) a TD AmeriTrade Account (account number ending in 5); and (c) a TD AmeriTrade Account (account number ending in 0).

26. According to Administratrix, the Non-Probatable Assets were received by Deborah, Phillip, Embry, and Russell's Estate.

27. The Court should exercise its equitable power to make any assets that would have been available to Russell had he lived to face judgment available to satisfy a judgment in this case. This would require Deborah, Phillip, Embry, and Administratrix to disgorge any such assets in the event Plaintiffs prevail in this action and obtain a judgment in excess of the amount available from Russell's probate estate.

In their subsequent motion to dismiss, Russell's children contended Appellants' "equitable recovery of assets" claim, which appeared to call for the "non-probatable assets" identified in Appellants' complaint to be placed in a "constructive trust," was not legally recognized in Kentucky.

---

[2] There is no dispute that the "non-probatable assets" at issue in this matter, identified in Paragraph 25 of Appellants' complaint, were subject to valid transfer-on-death designations and, thus, effectively avoided probate.

Responding,[3] Appellants argued that equity should not allow a murderer to shield his assets by killing himself. And, that while they had been unable to locate any Kentucky authority supportive of their argument,

> "a constructive trust arises when a person entitled to property is under the equitable duty to convey it to another because he would be *unjustly enriched* if he were permitted to retain it." *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App. 1985) (citing *Becker v. Neurath*, 149 Ky. 421, 149 S.W. 857 (Ky. 1912)).

> Our sister states have also found that situations such as this – where a murderer's family ultimately benefitted from his murder – are prime cases for application of the doctrine of equitable trusts. In an Indiana case in which a husband murdered his wife after she filed for divorce and then killed himself, the Indiana Court of Appeals held that it was appropriate to place a constructive trust on certain assets received by the husband's heirs as a result of his death.

>> In our view, to allow Robert's heirs to benefit from his wrongdoing would, in effect, confer a benefit upon Robert as a result of his wrongdoing. In addition, we cannot say that it was not Robert's intention to benefit his heirs when he took Donna's life and shortly thereafter took his own.

> *Heinzman v. Mason*, 694 N.E.2d 1164, 1167-1168 (Ind. App. 1998). The *Heinzman* court went on to quote from a similar case from Montana.

>> It is argued that the petitioners did not commit the killing, but are the heirs of the one who did the killing. Though this is true,

_____

[3] Appellants set forth this argument in their September 10, 2019 "response to motion to dismiss."

-7-

who can say that it was not the intention of
the murderer to benefit his heirs when he
took the life of his wife followed shortly
thereafter by the taking of his own life.

*Id*. at 1168 (quoting *In re Cox' Estate*, 141 Mont. 583,
380 P.2d 584, 588 (Mont. 1963)).

Like the individual Defendants in the present case, the
heirs at issue in *Heinzman* had not committed any wrong.
However, that was not sufficient basis for denying the
equitable remedy of a constructive trust.

(Emphasis added.)

Having made their respective arguments, the parties submitted the

matter for final adjudication, asking the circuit court to determine whether

Appellants' "equitable recovery of assets" claim was recognized under Kentucky

law. In an order of September 23, 2019, the circuit court answered in the negative

and, accordingly, dismissed Appellants' suit to that extent.[4] This appeal followed.

We review dismissals under CR 12.02(f) *de novo*. *Morgan &*

*Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011), *overruled*

*on other grounds by Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019). CR 12.02(f)

is designed to test the sufficiency of a complaint. *Pike v. George*, 434 S.W.2d 626,

627 (Ky. 1968). It is proper to grant a CR 12.02(f) dismissal motion if:

---

[4] The remainder of Appellants' claims remain pending. *See* CR 54.02 (permitting the trial court to make an otherwise interlocutory order – *e.g.*, one adjudicating less than all claims between all litigating parties – final and appealable in certain circumstances).

-8-

> it appears the pleading party would not be entitled to
> relief under any set of facts which could be proved in
> support of his claim. . . . [T]he question is purely a
> matter of law. Stated another way, the court must ask if
> the facts alleged in the complaint can be proved, would
> the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002) (internal quotation marks and citation omitted). For purposes of a CR 12.02(f) motion, this Court, like the circuit court, must accept as true the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Pike*, 434 S.W.2d at 627.

In their brief before this Court, Appellants repeat the argument they made below regarding the veracity of their "equitable recovery of assets" claim. Simply put, Appellants' "claim" is for a constructive trust to be impressed upon the vested property interests of an alleged murderer.

With that said, there are at least three problems. First, the imposition of a "constructive trust" is not a claim. It is merely a remedy. *Middleton v. Beasley*, 186 Ky. 252, 216 S.W. 591, 592 (1919). To explain:

> When legal title to property has been acquired or held
> under such circumstances that the holder of that legal title
> may not in good conscience retain the beneficial interest,
> equity converts him into a trustee. *Middleton v. Beasley*,
> 186 Ky. 252, 216 S.W. 591, 592 (1919) (citations
> omitted). Constructive trusts are created by the courts
> "in respect of property which has been acquired by fraud,
> or where, though acquired originally without fraud, it is
> against equity that it should be retained by him who
> holds it." *Hull v. Simon*, 278 Ky. 442, 128 S.W.2d 954,
> 958 (1939); *see also O'Bryan v. Bickett*, 419 S.W.2d 726,

-9-

728 (Ky. 1967). "The fraud may occur *in any form of unconscionable conduct*; taking advantage of one's weaknesses or necessities, or in any way violating equity in good conscience." *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App. 1985) (emphasis added), *citing St. Louis and S.F.R. Co. v. Spiller*, 274 U.S. 304, 47 S.Ct. 635, 71 L.Ed. 1060 (1927). In fact, a court exercising its equitable power may impress a constructive trust upon one who obtains legal title, "not only by fraud or by violation of confidence or of fiduciary relationship, but *in any other unconscientious manner*, so that he cannot equitably retain the property which really belongs to another[.]" *Scott v. Scott*, 183 Ky. 604, 210 S.W. 175, 176 (1919) (emphasis added). Similarly we have said that a constructive trust may be imposed where title is taken under "circumstances of circumvention [or] imposition[.]" *Middleton*, 216 S.W. at 592.

*Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. App. 2007).

Second, Appellants have asserted no viable claim that could serve as a basis for imposing a constructive trust. As indicated above, constructive trusts may be imposed as a remedy associated with claims of fraud, breach of confidence, breach of fiduciary duty, or unjust enrichment. But, throughout their pleadings and in their appellate brief, Appellants conceded Russell's children "had not committed any wrong." Appellants have never argued Russell's children acquired the "non-probatable assets" through any "unconscientious manner" involving fraud, breach of confidence, or breach of fiduciary duty.

Moreover, while Appellants asserted (in their response to the Russell children's motion to dismiss) that the Russell children would be "unjustly

-10-

enriched" if allowed to retain the "non-probatable assets," the circumstances presented in this matter would fail to support any *claim* of unjust enrichment. To explain:

> In order for a party to prevail under the theory of unjust enrichment, it must prove three elements: "(1) benefit conferred upon defendant at plaintiffs [sic] expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."

*Furlong Dev. Co., LLC v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009)).

With respect to the first of these elements, "[a] slayer's acquisition, enlargement, or accelerated possession of an interest in property as a result of the victim's death constitutes unjust enrichment that the slayer will not be allowed to retain." *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 45 (2011); *see also Cowan v. Pleasant*, 263 S.W.2d 494, 495 (Ky. 1953)[5]

---

[5] The *Cowan* Court recognized that Kentucky's policy against permitting an individual from profiting from murder is largely reflected in Kentucky Revised Statute (KRS) 381.280, which provides in relevant part:

> (1) If the husband, wife, heir-at-law, beneficiary under a will, joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent or victimizes the decedent by the commission of any felony under KRS Chapter 209 and in either circumstance is convicted therefor, *the person so convicted forfeits all interest in and to the property of the decedent*, including any interest he or she would receive as surviving joint

-11-

(explaining that the heirs of a joint tenant who murdered his co-tenant and then committed suicide could only inherit the murderer's share of the property – and not any interest the murderer would otherwise have acquired through a survivorship interest in the property – because "[i]t is axiomatic that a wrongdoer should not be permitted to profit from his wrongful act").

Here, the first of these elements is absent. Russell's children were not enriched at *Russell's* expense; after all, Russell had chosen them as his transfer-on-death beneficiaries. Russell's children were not enriched at Russell's *estate's* expense because, as Appellants had alleged, Russell's estate never had any interest or expectancy in the "non-probatable assets." More to the point, Russell's children were not enriched at Gloria's expense because she never had any interest in the non-probatable assets and because those assets were never any form of profit from Gloria's death.

---

tenant, and the property interest or insurable interest so forfeited descends to the decedent's other heirs-at-law, beneficiaries, or joint tenants, unless otherwise disposed of by the decedent. A judge sentencing a person for a [sic] offense that triggers a forfeiture under this section shall inform the defendant of the provisions of this section at sentencing.

(Emphasis added.) Obviously, this statute cannot apply here, as it did not apply in *Cowan*, because there was no *convicted* murderer in either instance; suicide prevented any such determination. From a broad public policy standpoint, however, this statute is notable for what it states about the *kind* of property that a murderer forfeits – namely, property the murderer would not have received, but for the killing. Likewise, *Cowan* is notable because, despite the absence of any murder conviction in that matter, the Court nevertheless followed the public policy embodied in the statute.

Finally, we turn to the third problem with Appellants' "claim" to place a constructive trust upon the "non-probatable assets." As indicated, our Courts have specified that the purpose of a constructive trust is to prevent an individual from retaining property he or she *acquired* in an unconscientious manner, "*which really belongs to another*[.]" *Scott v. Scott*, 183 Ky. 604, 210 S.W. 175, 176 (1919) (emphasis added) (citation omitted). In other words, constructive trusts are applied to property that a wrongdoer acquired, enlarged, or accelerated his possession of as a result of his wrongdoing, and at the expense of a victim.[6] "[R]ules of equity[,]" however, "do not extend so far as to deprive the killer of his own property."[7]

---

[6] The caselaw Appellants discovered in Indiana and Montana is also consistent with this principle. Specifically, in *Heinzman v. Mason*, 694 N.E.2d 1164, 1167 (Ind. Ct. App. 1998), the Indiana Court of Appeals held that "even in the absence of statutory authority, a court may properly impose a constructive trust upon any property *acquired* by an individual or his estate when the individual wrongfully kills his spouse and then commits suicide before he can be charged or convicted of causing the death." (Emphasis added.) There, the property *acquired* consisted of life insurance proceeds. The killer was the sole beneficiary of the insurance policy, the victim was the insured, and the court held that because the killer's wrongdoing caused the insured's death and put him in a position to benefit from that death, neither he nor his estate was eligible to receive the proceeds. *Id*. at 1166, 1167.

Similarly, *Cox* was a murder-suicide case involving the disposition of real property held jointly by the deceased husband and wife. The court concluded that inherent in the Montana statute dealing with joint property was the idea that the felonious killer should not benefit. Thus, while it did allow the heirs of the murderer to inherit the murderer's vested interest in the real property, it did not allow the heirs of the murderer to inherit the victim's interest. *See In re Cox' Estate*, 380 P.2d 584 (Mont. 1963).

[7] *See Estate of Charlotte Foleno v. Estate of Billy Foleno*, 772 N.E.2d 490, 496 (Ind. Ct. App. 2002). Although it is beyond the necessary scope of this case, we add that *Foleno* also provides a robust historical analysis of the now-outdated common law doctrines of attainder, forfeiture, corruption of blood, and escheat, the disfavor of which largely accounts for why modern slayer

Here, to once again belabor the point, Russell did not acquire, enlarge, or accelerate his possession of the John Hancock annuity account or TD AmeriTrade accounts at issue in this matter as the result of any alleged wrongdoing, or at the expense of any victim; rather, he already owned those assets. Gloria's death had no bearing upon his ownership, or his children's subsequent ownership.

Considering the foregoing, the Daviess Circuit Court did not err in dismissing Appellants' "equitable recovery of assets" claim. We, therefore, AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANTS:

S. Coy Travis
Hillview, Kentucky

BRIEF FOR APPELLEES:

Samuel B. Lee
Owensboro, Kentucky

---

statutes and equitable principles merely prohibit a killer from profiting from murder and do not force a killer to forfeit their own property. *See id*. at 493-96.